# Commonwealth ex rel. *v.* State Bank of Pittsburg.

*Banks and banking—Bills of exchange—Separation of funds.*

Where a creditor draws upon a debtor and sends the draft for collection to a bank in which the debtor is a depositor, and the bank with the depositor's consent issues a draft to the creditor on a bank in another city, and charges the amount of the draft against the depositor's account, and it appears that

before such charge was made the money was remitted to pay the draft, the creditor cannot claim, after the failure of the first bank, that the money sent to the second bank was so separated from the general funds of the first bank, that it should be applied to the payment of his draft.

Argued May 23, 1906. Appeal, No. 5, May T., 1906, by Corning & Company, from order of C. P. Dauphin Co., Commonwealth Docket, 1904, No. 23, dismissing exceptions to auditor's report in case of Commonwealth ex rel. v. State Bank of Pittsburg. Before MITCHELL, C. J., FELL, POTTER, ELKIN and STEWART, JJ. Affirmed.

Exceptions to auditor's report.

KUNKEL, P. J., filed an opinion of which the portion applicable to this appeal was as follows:

The New York drafts, upon which claim was made for preferential payment and in behalf of which exceptions have been filed, are drafts drawn by the State Bank upon its correspondent, the Hanover National Bank of New York, in favor of the claimants to whom they were issued in payment of drafts which had been sent to the State Bank for collection. The circumstances under which the drafts were issued appear from the auditors' report and from the testimony taken before them to be as follows: The claimants drew their drafts upon their debtor, one Letzelter, and sent them to the State Bank for collection. Letzelter was a depositor in the State Bank, which with his consent charged them against his account. The bank then issued the drafts in question to the claimants. The auditors have found "that money to meet the drafts issued by the State Bank on the Hanover National Bank was forwarded to New York from time to time as drafts were drawn by the cashier of the State Bank," and it also appears that at the time the drafts were issued there was sufficient money in the Hanover National Bank to the credit of the State Bank to meet them. After the failure of the State Bank the receiver stopped payment upon the drafts and withdrew the money from the Hanover National Bank.

The claimants' position is that the drafts are entitled to be first paid out of the fund which was deposited in the Hanover

National Bank, because in that fund are to be found the moneys which the State Bank collected as their agent.

It is clear that when Letzelter's account was charged with the drafts which were drawn against it there was no fund created distinct from the general funds of the bank.

It is contended, however, that inasmuch as money was deposited in the Hanover National Bank to pay the drafts at the time they were drawn, that that was such an appropriation, or setting apart, by the State Bank out of its general funds with which the collections were mingled as identified the money thus deposited as the money collected for the claimant. This contention assumes, so far as the drafts charged against the depositors' accounts are concerned, that the charge was made before the money was sent to the Hanover National Bank, while the contrary appears from the testimony. The teller of the bank testifies: " We made them good before we charged them up." If the money was sent to the Hanover National Bank before the accounts were charged, it could not be said to be the money collected, for until the depositor's accounts were charged the collection was not in fact made, and that part of the general funds of the State Bank sent to the Hanover National Bank was not taken from the depositors. We cannot say, therefore, that the moneys in the Hanover National Bank have been identified as the moneys collected for the holder of the drafts whose original drafts were charged to the depositor's accounts. Nor are we prepared to say that the sending of moneys to the Hanover National Bank to pay any of the drafts is an identification of the moneys collected by the State Bank for the claimants. It is true that the moneys were intended by the State Bank to be used in the payments of the amounts collected for the claimants, and in place of the moneys collected, but the circumstances fall short of identifying them as the moneys which the bank held as their agent. Unless identified, it is manifest the moneys cannot be successfully claimed by them. It is needless to refer to the authorities which announce the doctrine with respect to tracing a trust fund. But it may be observed that in Freiberg v. Stoddard, 161 Pa. 259, the depositor's account was charged with the amount of the draft drawn upon him and the bank's draft upon another bank issued to the drawer; nevertheless no preference

was allowed, although in that case it was evident from the transaction itself that the moneys drawn upon were intended to be a substitute for the moneys collected.

We are of the opinion that the learned auditors reached the right conclusion in the disposition they made of these claims.

*Error assigned* was the order of the court.

*E. W. Smith,* of *Reed, Smith, Shaw & Beal,* with him *James M. Lamberton,* for appellant.—If the State Bank collected the drafts drawn by Corning & Company upon Letzelter, whether by charging them to his account or by receiving the money in whole or in part, it was impressed with a trust: State v. Bank of Commerce, 61 Neb. 181 (85 N. W. Repr. 43); People v. City Bank, 96 N. Y. 32; Importers & Traders' Nat. Bank v. Peters, 123 N. Y. 272 (25 N. E. Repr. 319); Spokane County v. First Nat. Bank of Spokane, 68 Fed. Repr. 979; People v. Bank of Dansville, 39 Hun, 188; Knatchbull v. Hallett, L. R. 13 Ch. Div. 696; Van Alen v. American National Bank, 52 N. Y. 1; Peak v. Ellicott, 30 Kan. 156 (1 Pac. Repr. 499); McLeod v. Evans, 66 Wis. 401 (28 N. W. Repr. 173, 214); Nurse v. Satterlee, 81 Iowa, 491 (46 N. W. Repr. 1102); Continental Nat. Bank v. Weems, 69 Tex. 489 (6 S. W. Repr. 802). If the assets of the state bank were increased by deposits by Letzelter to meet the drafts drawn on him, to that extent Corning & Company can recover, and this whether there was a separation or not: Frelinghuysen v. Nugent, 36 Fed. Repr. 229; Metropolitan Nat. Bank v. Campbell Commission Co., 77 Fed. Repr. 705; Philadelphia Nat. Bank v. Dowd, 38 Fed. Repr. 172.

If the State Bank took from its general fund and deposited in the Hanover bank any money, not necessarily the identical Letzelter money, and issued the drafts to Corning & Company, this was a sufficient separation or indentification to give Corning & Company the right to hold the money in the Hanover bank.

That such a fund does not need to correspond exactly with the amount of the drafts, we think has been decided by the courts of this state: Lebanon Trust & Safe Dep. Bank's Assigned Estate, 166 Pa. 622.

The case of Jordan & Porter, 10 W. N. C. 37, is exactly in point.

*F. C. McGirr*, of *Marron & McGirr*, for appellee.—This case is ruled by Freiberg v. Stoddard, 161 Pa. 259.

PER CURIAM, June 27, 1906:

The judgment is affirmed on that part of the opinion of the court below which applies to this claim.