# Appeal of Peter G. Cameron, in the Matter of Claim of Ottumwa National Bank.

*Banks and banking—Negotiable instruments—Notes—Collection— Trust funds—Secretary of Banking—Duties of—Banking of June 15, 1923, P. L. 809, sections 40, 41, 42 and 43.*

Under the provisions of the Banking Act of 1923 it is the duty of the Secretary of Banking, as the representative of all the creditors to protect the estate of an insolvent trust company, by setting up a defense to a claim, if any he has, and appealing from an adverse judgment or decree in whatever forum or proceeding it might be rendered.

Under the provisions of sections 41, 42 and 43 of the Banking Act of 1923 the remedy of a claimant to funds in the hands of the Secretary of Banking is to file exceptions to the account filed by the Secretary and prove the claim at the hearing on such exceptions.

Even where there is a deficiency in the trust fund for which the corporation or person is liable, the amount thereof constitutes only an unpreferred claim against the general fund in the hands of the Secretary of Banking. The proper remedy, therefore, for one claiming participation in such fund is to file a claim as a creditor with the Secretary.

Where a trust company, although insolvent, collects moneys for a correspondent bank and deposits them in its general funds, such collections do not constitute a trust fund, but are part of the general assets of the insolvent company. Where a claimant cannot identify or trace title to any particular part of the deposits his claim cannot rise higher than others whose money was deposited in the same general funds.

Argued April 25, 1927. Appeal No. 50, April T., 1927, by Peter G. Cameron, Secretary of Banking, from order of C. P. Allegheny County, July T., 1925, No. 663, in the matter of the claim of Ottumwa National Bank. Before HENDERSON, TREXLER, KELLER, LINN, GAWTHROP and CUNNINGHAM, JJ. Reversed.

Rule to show cause why fund should not be declared a trust fund and payable to Ottumwa National Bank. Before SHAFER, P. J.

The facts are stated in the opinion of the Superior Court.

The court made absolute the rule. The Secretary of Banking appealed.

*Error assigned,* among others, was the judgment of the Court.

*E. Lowry Humes,* and with him *Leonard K. Guiler,* for appellant.

*W. D. Stewart,* and with him *Thorp, Bostwick, Stewart & Reed,* for appellee.

OPINION BY GAWTHROP, J., October 7, 1927:

This record presents for determination more of the many questions arising out of the affairs of the Carnegie Trust Company, of Carnegie, Pennsylvania.

On April 17, 1925, the Ottumwa Iron Works, a corporation, deposited with the Ottumwa National Bank, of Ottumwa, Iowa, hereinafter called bank, and received credit therefor in its account with said bank, a note of the County Coal Company, of Alabama, which had its office at Carnegie, Pennsylvania, in the sum of $1,000, with interest thereon, for ninety days. On the same day the bank sent the note to the Carnegie Trust Company, hereinafter called trust company, for collection and remittance. The bank was neither a customer nor depositor of the trust company. On April 20, 1925, the trust company collected the note from the maker in cash and on the same day drew its draft on the Colonial Trust Company, which was one of its depositories, in favor of the bank for $1,014, the proceeds of the collection, and forwarded it to the bank. The draft was cleared by the bank in the regular course of business and presented to the Colonial Trust Company for payment on April 27, 1925. The Colonial Trust Company refused to pay the draft, because on that day the Secretary of Banking had taken possession and control of the business and property of the trust company in accordance with the laws of the

State. At that time the amount of the deposit of the trust company with the Colonial Trust Company was in excess of the amount of the draft. The affairs of the trust company are being wound up by the Secretary of Banking, who, on January 15, 1926, filed his first and partial account of the assets of that company which came into his hands, together with a schedule of distribution of the balance shown thereby, in which account the claim of the bank was listed as a preferred claim, entitled to share pro rata with the depositors of the trust company. On January 25, 1926, the bank filed exceptions to the schedule of distribution on the ground that the amount of the draft should have been allowed as a trust fund in possession of the Secretary of Banking belonging to the bank, and should be paid in full instead of being entitled only to a pro rata distribution as shown by the account filed. On the same day the bank presented a petition to the Court of Common Pleas of Allegheny County at the same number and term at which the account had been filed, alleging the foregoing facts and that on the day the trust company received the note for collection it was insolvent and known to be insolvent by its officers and had been insolvent for some time prior to that date, but that the bank had no knowledge thereof; that it was a fraud upon the bank for the trust company to accept said note for collection, and that the proceeds of the collection never became the property of the trust company, but at all times remained the property of and belonged to the bank. The court below granted a rule on the Secretary of Banking to show cause why the sum of $1,014, with interest thereon from April 27, 1925, should not be declared to be a trust fund and payable to the bank in full and in preference to the claims of depositors and creditors of the trust company. The answer of the Secretary of Banking averred that the cash collected by the trust company

from the County Coal Company on April 20, 1925, was
not deposited in the Colonial Trust Company and con-
stituted no part of the deposit remaining therein to
the credit of the trust company on April 27, 1925, and
that the Secretary of Banking was without knowledge
as to whether or not the officials of the trust company
knew on April 20, 1925, that the trust company was
insolvent then and prior thereto. It was admitted that
the trust company was in fact insolvent at that time.
It was averred further that the collection of the draft
was made by the trust company in cash which, in the
usual course of business, was mixed with the other
cash belonging to the trust company in its cash draw-
ers and vault; that the money was not ear-marked
and could not be identified, and in any way become
part of the general funds and assets of the trust com-
pany. On March 11, 1926, the court below held that
"under the circumstances it.....would be fraud upon
the Ottumwa National Bank for the trust company to
retain and add to its assets money so acquired," and
made the rule absolute. Thereupon, the Secretary of
Banking took this appeal.

Counsel for appellee filed in this Court a motion to
quash the appeal on the ground that the Secretary of
Banking is a mere stake holder without any legal in-
terest which entitles him to appeal. Argument on that
motion was heard with the argument of the questions
raised in the appeal. It was urged in support of the
motion that the decision of our Supreme Court in
Cameron, Receiver, v. City Bank of York, 284 Pa. 187,
is controlling and requires the quashing of the appeal.
We are of one mind that that decision has no such ef-
fect. That was an appeal by the Secretary of Banking
from a decree of distribution made upon that official's
account and schedule of distribution. The dispute
there was entirely between two classes of creditors.
As we understand that decision, what the Supreme

Court decided was that the Secretary of Banking did not represent one class more than he did the other and had no standing to appeal for the benefit of either. The opinion says: "The Secretary of Banking, as the representative of all the distributees, may defend a claim against the estate and appeal from a judgment or decree allowing it." The present is exactly such a claim. Appellee asserts that the proceeds of the note never became the property of the bank and claims a right to part of the assets of the insolvent trust company not as a creditor but as one having a higher right than any of its creditors. We are of opinion that it was not only the right but the duty of the Secretary of Banking, as the representative of all the creditors, to protect the estate of the insolvent trust company by setting up a defense to such a claim, if any he had, and appealing from an adverse judgment or decree in whatever forum or proceeding it might be rendered. The motion to quash is therefore dismissed.

The first contention of appellant is that the court below had no jurisdiction to determine in this proceeding the question whether the bank was entitled to recover the proceeds of the note as a trust fund; that the Banking Act of 1923, P. L. 809, provides a complete system for the liquidation of the affairs of a corporation or person in possession of the Secretary of Banking, and that appellee's only remedy was to proceed under that act by filing exceptions to the account filed by the Secretary of Banking and proving its claim at the hearing on such exceptions. An examination of that act discloses that it does provide a system for the liquidation of the affairs of corporations and persons subject to the supervision of the Banking Department of the Commonwealth; that Sections 41, 42 and 43 provide for the making of proof of claims by depositors and other creditors; that Sec. 45 provides for the filing by

the Secretary of Banking, in the proper court, of an account, together with a list of claims which have been allowed, and, separately, a list of claims which have been objected to or are disputed; and that during a period of thirty days after the filing of such account "any depositor, other creditor, stockholder or anyone having any interest, may file in the court objections in writing to said account"......It is provided that if there shall be exceptions to the account the court shall hear and determine the matters in controversy. Appellee contends that its status is not that of a creditor of the trust company; that the relation between it and the trust company was that of principal and agent; that, as the trust company was insolvent at the time it took the note for collection, it became a trustee ex maleficio; that the proceeds of the note were a trust fund which never was a part of the assets of said company; and that the provisions of the Act of 1923, to which references has been made, are not controlling. It urges that the procedure adopted by it in this case is authorized by Section 40 of the Act of 1923. The title to that section is, "Trust Funds." The section provides, inter alia, that "whenever the secretary takes possession of the business and property of a corporation or person in accordance with the provisions of this act, he shall also take possession of all funds, property, and investments held by such corporation or person in any fiduciary capacity, but shall keep the same separate and apart from the assets thereof;" that upon determining to liquidate the affairs of such corporation or person the secretary shall give notice to all parties interested in any such funds, property or investments held in a fiduciary capacity, requiring them within thirty days to apply to the proper court for the appointment of substituted fiduciaries to take the place of such corporation or person and, on the failure or neglect of such parties to make such applica-

tion, the secretary shall himself apply for such appointment; that "in any instance where there shall be a dispute as to the identity of alleged trust funds, property, or investments, either because the same have become or are alleged to have become mingled with other funds, property, or investments, or otherwise, the court having jurisdiction of the liquidation proceedings shall have exclusive jurisdiction to determine such dispute;" that in all instances the secretary shall prepare and file in the courts having jurisdiction thereof the accounts of such corporation or person in such fiduciary capacities and shall transfer, pay over and deliver the balances due in accordance with the orders and decrees of such courts. Paragraph (F) of that section provides further: "In any instance where it shall be ascertained by such court that there is a deficiency in any such trust funds, property, or investments for which such corporation or person is liable, or that such corporation or person is liable to surcharge in respect thereof, the amount thereof shall constitute an unpreferred claim against the general funds in the hands of the secretary, and the order or decree of such court shall be conclusive, subject to appeal as to the amount of such claim." It is gravely doubtful whether Section 40 applies to any trust funds, except those held by a duly appointed fiduciary. Conceding, but not deciding, that it applies to every case in which a corporation or person, whose affairs are being liquidated by the Secretary of Banking, holds property in trust for another, it seems clear that by the terms of the section whenever there is a deficiency in such trust fund or property for which such corporation or person is liable, the amount thereof constitutes only an unpreferred claim against the general funds in the hands of the Secretary of Banking. It follows that appellee's only remedy was to file its claim as a creditor with the Secretary of Banking.

But the order of the court below was wrong for another reason, which involves the main questions in the case: Was the money received by the Carnegie Trust Company in payment of the note a trust fund? If so, was this trust impressed on the funds remaining in the trust company at the time of its insolvency so as to entitle appellee to a priority over other creditors.

We agree with appellee that the cash which the trust company received in payment of the note was a trust fund. "As a general rule, checks and other papers deposited in a bank for collection remain the property of the depositor, and the bank performs the service of collection as his agent": 7 C. J. 597. "The collecting bank can sue in its own name on paper which has been endorsed to it for collection": 7 C. J. 612. "When the paper is accepted for collection under express directions to collect and remit, the money in the hands of the bank is then a trust fund (for the real owner)": First Nat'l. Bank Spring Mills v. Walker, 289 Pa. 252, citing 7 C. J. 617. "In making collections for non-depositors a bank acts as agent until the completion of the collection and the return of the proceeds to the employer": 7 C. J. 599. It is, however, not merely the fact of a trust relation that entitles appellee to priority, but its ability to trace and identify the fund as its property: Webb v. Newhall, 274 Pa. 135; Lifter v. The Earle Co., 72 Pa. Superior Ct. 173. A trust creditor, merely as such, has no preference over others: Thompson's Appeal, 22 Pa. 16. Was the trust impressed on the general funds in the vaults of the trust company? Our Supreme Court decided in two recent cases that where a person received money as agent for another without authority to use it as his own, the principal did not lose its title thereto by its deposit in the bank account of the agent, so long as it could be traced; that in such case it is the identity of the fund, not the pieces of coin or bank notes, that controls;

that where such an agent has mingled his own property with that of the principal, the latter may reclaim from the admixture an amount equal to his own, although it may not be the same identical property, and the same rule applies to money placed in a bank account. (See Vosburgh's Estate, 279 Pa. 329, and Webb v. Newhall, supra.) But that tribunal has steadily refused to apply that rule in cases in which the agent is authorized by law to receive and handle funds of others and do a general banking business. In Vosburgh's Estate, supra, Mr. Justice KEPHART, speaking for the court, said: "Every deposit is a trust, except possibly general bank deposits." In Webb v. Newhall, supra, Mr. Justice WALLING said that an entirely different case would be presented had the agent been a banking institution instead of a mere broker, and mingled the funds with those of others in the general course of business. In support of that proposition, the court cited Com. ex rel. v. Tradesmen's Trust Co. (No. 2), 250 Pa. 378; Miller's Appeal, 218 Pa. 50, and Bank's Assigned Estate, 166 Pa. 622. In the Tradesmen's Trust Company case, the single question was whether a cestui qui trust may claim the amount of deposits, with an insolvent trust company, as a preference where the company mingles the funds with its general account, but at all times keeps in such account a balance in excess of the amount of trust money claimed. The contention of appellant in that case was that the Supreme Court should apply the rule of law declared in the leading case of Knatchbull v. Hallett, 49 L. J. Ch. 415, 13 Ch. Div. 696, and subsequent English and American cases following that decision, that where a trustee receives money from a cestui que trust and deposits it with his own account, and in his own name, and subsequently adds and withdraws money from the amount, the cestui que trust may claim to the extent of his trust fund the lowest amount which was on deposit at any

time during the continuance of the trust, regardless of the fact that the funds were commingled and increased or diminished from time to time. The Supreme Court said: "There appears to be no case in Pennsylvania where it has been decided by an appellate court that the rule is the law of this State........The trustee here is a trust company authorized by statute to receive and handle trust funds of others and do a general banking business. In the conduct of this business it necessarily handled trust funds belonging to a large number of persons. These funds in the present case were deposited in a general account and in this way it became impossible to say to whom any particular part belonged. The case is distinguishable from that of an individual trustee who mixes the funds of a single cestui que trust with his own account. In such case it can readily be determined whether and to what extent he has appropriated the trust funds to his own use. On the other hand, when a trust company deposits in a common account funds belonging to various persons, it cannot be said that the mere fact of there being on deposit at all times sufficient to meet the claim of any particular customer of the bank, entitled that customer to claim it as against other claimants whose money also went into the same account. Claimant could not trace title to any particular part of the deposits and his claim can therefore rise no higher than the claim of others whose money was deposited in the same general fund." See also: Com. v. Union Surety & Guar. Co., 37 Pa. Superior Ct. 179; Freiberg v. Stoddard, 161 Pa. 259; Bank's Assigned Estate, supra. There is nothing in the present case to take it out of the rule announced by these decisions. It is well settled that the drawing of the draft on the Colonial Trust Company did not amount to an assignment of funds in the amount thereof and did not create a fund distinct from the general funds of the bank. (Com. ex rel. v. State

Bank, 216 Pa. 124). Appellee failed entirely to identify or trace title to any particular part of the deposits in the insolvent trust company. It is urged in its behalf that, as the trust company was insolvent at the time of taking the note for collection, such taking was such a fraud on appellee as rendered the trust company a trustee ex maleficio and that, under the rule announced in Conneautville Bank's Assigned Estate, 280 Pa. 545, no title to the proceeds of the note passed to the trust company by the fraudulent act of its officers, and the Secretary of Banking can only lawfully claim out of the deposits in the trust company funds belonging to it and not those belonging to others to which the trust company had no claim or title. The case relied on is readily distinguishable from the one at bar. There the cashier of the bank stole bonds from a safe deposit box, sold them through brokers and deposited the proceeds of the sale in the account of the Conneautville Bank in a bank in Pittsburgh, which at all times was in excess of the amount of the value of the stolen bonds. It was held that that was not the case of a bank holding the funds of a patron as a trust and the mingling or mixture of trust funds; that the securities were not held in trust by the bank; that its relation to them was merely that of bailee for custody; that this relation did not change when they were stolen from the box and converted into money. After full consideration of the arguments presented and an examination of the authorities cited, we are constrained to hold for the reasons stated that appellee is not entitled to the relief granted by the court below.

The judgment is reversed.