# Cameron *v.* Carnegie Trust Co.

*Banks and banking — Secretary of banking — Claims against banks—Appeals—Interested parties.*

1. The proper time to present a claim against funds collected by the secretary of banking, under the banking laws of the State, is when his account of those funds has been filed, and is before the court for a decree of distribution.

2. From such a decree only those personally interested have a standing to appeal.

*Banks and banking—Collector of note—Principal and agent— Insolvent bank—Trustee ex maleficio—Mingling funds.*

3. Where a note, check or draft has been sent to a banking institution for collection and remittance only, the relation between the sender and collector is that of principal and agent, and the trust is an express one.

4. An insolvent banking institution should not accept a note, check or draft sent to it for collection and remittance only. If it does, the amount collected should be set apart at once in a separate and distinct account, in the name of and payable to the sender only. A failure to pursue one or the other of these courses makes the banking institution a trustee ex maleficio as to the moneys received and mingled with its own funds.

5. Where a banking institution mingles with its own funds those collected by it as agent only, and the total amount of the commingled funds is at all times sufficiently large to make good the amount thus collected, the court will, on distribution of the commingled funds, award to the principal the amount due him, although he is unable to trace it into any particular account, if the effect of deciding otherwise would be to give to other distributees a greater share than they would have received but for the wrongdoing of the agent.

6. No one, however innocent he may be, will be permitted to benefit by the wrong doing of another, if the result will be to make effective the injury to the person wronged, and it is equitably possible to prevent such a result.

*Equity—Answer—Knowledge and belief—Insufficient answer.*

7. In an equitable proceeding, an answer is insufficient which simply says that respondent is without knowledge regarding a fact or facts averred in the petition; to be sufficient, respondent must aver either that he endeavored to obtain information on the

subject and from what he had learned he believed the statements to be untrue, or that he was unable to obtain sufficient knowledge to enable him to admit or deny them, and hence requires petitioner to make proof thereof.

*Banks and banking—Custom—Bad custom—Mingling funds by bank.*

8. The courts will not enforce a custom which is bad; hence they will not sustain one which attempts to justify an insolvent banking institution in mingling with its own funds money collected by it as agent only.

Argued January 3, 1928. Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ.

Appeal, No. 31, March T., 1928, by Ottumwa National Bank, from judgment of Superior Court, April T., 1927, No. 50, reversing order of C. P. Allegheny Co., July T., 1925, No. 663, in case of Peter G. Cameron, Secretary of Banking, v. Carnegie Trust Co. Reversed.

Appeal from Superior Court: 91 Pa. Superior Ct. 495.

The opinion of the Supreme Court states the facts.

The Superior Court reversed the order of the court of common pleas. Ottumwa National Bank, claimant, appealed.

*Error assigned* was judgment, quoting record.

*W. D. Stewart,* of *Thorp, Bostwick, Stewart & Reed,* for appellant.—The collection item was a trust fund and should have been paid in full out of the assets of the insolvent trust company in the hands of the receiver: Bank v. Loan, etc., Co., 188 Pa. 330; Christy v. Sill, 95 Pa. 380.

The bank being a trustee ex maleficio the appellant had a lien on the funds of the trust company: Conneautville Bank's Assigned Est., 280 Pa. 545; Vosburgh's Est., 279 Pa. 329; Webb v. Newhall, 274 Pa. 135.

The receivers had no standing to appeal: Cameron v. Bank, 284 Pa. 187.

*E. Lowry Humes,* with him *Leonard K. Guiler,* for appellee.—The secretary of banking had a right to appeal from the order making the rule absolute: Cushing v. Perot, 175 Pa. 66; Printing Press Co. v. Pub. Co., 207 Pa. 212; State Bank of Pittsburgh v. Kirk, 216 Pa. 452.

The court had no jurisdiction to determine the question involved by rule on the secretary of banking.

The secretary of banking and those whom he represents were deprived of their property without due process of law, by the lower court's order: Coe v. Fertilizer Works, 237 U. S. 413; Standard Oil Co. v. Missouri, 224 U. S. 270; Sawyer v. Pittsburgh, 217 Pa. 17.

Assuming the court had jurisdiction to determine the question by rule on the secretary of banking, and that every allegation of the petition was admitted, the rule should have been discharged: Hecker-Jones-Jewell Mill Co. v. Trust Co., 242 Mass. 181; Planters Bank v. Union Bank, 16 Wall. 483; Frieberg v. Stoddard, 161 Pa. 259; Com. v. Union Surety and Guar. Co., 37 Pa. Superior Ct. 179; Com. v. Trust Co. (No. 2), 250 Pa. 378; Com. v. State Bank, 216 Pa. 124.

OPINION BY MR. JUSTICE SIMPSON, January 23, 1928:

The Ottumwa National Bank, appellant, sent to the Carnegie Trust Company a note for collection and remittance only. The bank was not a depositor of the trust company, and the latter institution was then insolvent, a fact which did not become known to the bank until after the secretary of banking had taken possession of the trust company's assets, as hereinafter set forth. Despite the fact of its insolvency, the trust company accepted the note, received its amount in cash, mingled the sum so received with its other funds, and sent to the bank a draft on the Colonial Trust Company, for the amount of the collection. In due course, the

draft was presented for payment, but this was refused, because, on that day, the secretary of banking, in accordance with the banking laws of the State, had declared the Carnegie Trust Company to be insolvent, and had taken possession of its assets, preparatory to closing up its affairs, as required by those laws. Subsequently the Colonial Trust Company paid to the secretary the balance due by it to the Carnegie Trust Company, which sum, at the time the draft in favor of the bank was drawn and at all times thereafter, was far in excess of the amount of the draft. The bank requested the secretary to pay it that amount, but he refused to do so. It thereupon presented its petition to the Court of Common Pleas of Allegheny County, which had jurisdiction of the accounts of the secretary, setting forth the facts, and asking that he be required to make the payment; he filed an answer; the court made the order prayed for, the Superior Court reversed, and we allowed the present appeal.

At bar, counsel for the respective parties asked us to decide the case on its merits, irrespective of the procedural points which had been suggested by them, viz.: (1) Whether or not the only time to raise the issue was on the settlement of the accounts of the secretary, and (2) whether or not, since he was but a stakeholder, he had any standing to appeal from the order of the court of common pleas. Though we are thus excused from deciding these points, it may be well to state that the proper procedure on questions affecting a distribution of the funds collected by the secretary, is to present a claim when his account has been filed and is before the court, at which time all the distributees can be heard, and from the decree which follows they alone have the right to appeal: Cameron v. City Bank of York, 284 Pa. 187. Section 40 of the Banking Act of June 15, 1923, P. L. 809, 827, relied on to sustain the course pursued here, obviously refers only to technical and continuing trusts, for it prescribes that substituted fiduciaries shall

be appointed, in place of the insolvent banking institution, to take over and thereafter administer the trust. This is the only section of the act which provides for a preliminary determination regarding any claim on the funds in the hands of the secretary, and hence,—expressio unius est exclusio alterius,—excludes the idea of a right to so proceed in any other instance.

Turning then to the substantial question involved, we find that, despite dicta to the contrary, nearly all of the applicable principles of law are well settled. The relation between the bank and the trust company was not the ordinary one of debtor and creditor, but that of principal and agent (Webb v. Newhall, 274 Pa. 135, 138; First National Bank of Spring Mills v. Walker, 289 Pa. 252, 256), and the trust is an express one: Vosburgh's Est., 279 Pa. 329, 332. Being insolvent at the time the note was received, the trust company should not have attempted to collect it (Corn Exchange National Bank v. Solicitors Loan & Trust Co., 188 Pa. 330); if it did, the least it could properly have done would have been to immediately set apart the cash received in a separate and distinct account, in the name of and payable to the bank only. Not having done either of these things, the trustee became a trustee ex maleficio as to the money received and mingled with its own funds: Christy v. Sill, 95 Pa. 380; Freiberg v. Stoddard, 161 Pa. 259, 262; Corn Exchange National Bank v. Solicitors Loan & Trust Co., supra.

Counsel for appellee strenuously urge, however, that, though it is conceded the trust company was insolvent throughout the entire transaction, it is not admitted or shown the officers knew this, and that the rule above stated will not apply unless they did. We are not interested in determining whether or not such a distinction exists, for, if it does, it would be inapplicable here. The petition avers not only the insolvency, but the knowledge of the bank officials; the answer admits the former, and as to the latter simply says that "respond-

ent is without knowledge" on the subject. This is an insufficient denial. Appellee asserts that he did not know of the fact of insolvency until after he took possession of the trust company's assets, and hence he must have obtained that knowledge either from an examination of the company's books or from those acquainted with its affairs. It is a little difficult to understand why that examination or information did not likewise show whether or not the bank officials had knowledge of the insolvency; but, whether it did or did not, this being an equitable proceeding, a pleading of ignorance on the subject was not sufficient to put upon appellant the burden of proving that otherwise undisputed fact: Fisher v. King, 153 Pa. 3; Bauer v. Hill, 267 Pa. 559. This being so,—as we said in Buehler v. U. S. Fashion Plate Co., 269 Pa. 428, and Transcontinental Oil Co. v. Atlas Assurance Co., Ltd., 278 Pa. 558, under different circumstances, however,—appellee was bound to aver, either that he had endeavored to obtain information on the subject and from what he learned he believed the officials did not know, or that he was unable to obtain sufficient knowledge to enable him to admit or deny the allegation, and hence required petitioner to make proof thereof. He avers neither of these things, and hence, for the purpose of the present proceedings, we must assume the trust company officials knew, when they accepted the note for collection and remittance only, that, because of the existing and continued insolvency, it would be a fraud on their part to receive the proceeds and mingle them with the general funds of the company.

It may be, as also contended by appellee, that it is the custom of banks, when a check, note or draft is sent for collection, to mingle the amount received thereon with the general funds of the bank and to send to the remitter a check for the amount collected. The present record is silent regarding any such alleged custom, and no authority has been shown us which so asserts, where, as here, the collecting agency was insolvent when the

check, note or draft was received and collected. If such a custom exists, it is, as respects the present status, a bad one, and the courts will not enforce it (Holmes v. Johnson, 42 Pa. 159; Dempsey v. Dobson, 184 Pa. 588), since it would enable a banking institution to successfully commit a fraud.

It is further contended that, even if the foregoing conclusions are correct, appellant cannot succeed, because unable to trace the proceeds of the note into any account which was existing at the time the trust company failed. The legal effect of this situation has long been a vexed question, but the modern doctrine sustains appellant's right. It would unduly prolong this opinion to attempt to review the numerous and conflicting cases on the subject; many of them will be found cited in 3 Pomeroy's Equity Jurisprudence (4th ed.), section 1048 (e), beginning on page 2384, from which we quote (page 2387): "If the beneficiary can show that the trustee's estate, as it came into the hands of his assignee, trustee in bankruptcy, receiver, executor of administrator, was *actually increased* by the whole or a definite portion of the misappropriated trust fund, justice demands that he, and not the other creditors, should have the benefit of this increase. The creditors have no right to make a profit by their debtor's breach of trust." And again (page 2388): "It is now the well settled rule, that where withdrawals from the mixed fund, with or without subsequent replenishing from the trustee's individual money, have not at any time reduced the balance to a sum less than the trust fund deposited, the cestui que trust, as against the trustee's creditors, is entitled to repayment in full; his money is sufficiently identified as having always been contained within the blended fund."

In the present case, admittedly, the money belonging to appellant was wrongfully included in the trust company's general assets, which were at all times sufficiently large to make good the amount due, and the effect of refusing relief would be to give to other distrib-

utees a larger sum than they would have received but for the fraud practised on appellant. In view of this, to rule in appellee's favor would be to make the fraud successful, whereas to refuse so to do could not possibly result in legal harm to anyone. Hence, we again state, what is and always should be fundamental, that no one, however innocent he may be, will be permitted to benefit by the wrongdoing of another, if the result will be to make effective the injury to the person wronged, and it is equitably possible to prevent such a result: Stirk's Est., 232 Pa. 98, 110; O'Connor v. O'Connor, 291 Pa. 175.

A study of our decisions will show that they do not antagonize the conclusion here reached. In Freiberg v. Stoddard, 161 Pa. 259, there was no money received by the bank, to whom the drafts were sent for collection, but only a charging of the amount thereof against the deposit account of the drawer; and it may fairly be assumed, from the opinion of Judge RICE, which was adopted by this court, that if the bank had actually received money for the drafts, and this had been mingled with its other funds, the drawer would have been entitled to a preference: see pages 262, 263, 264. In Lebanon Trust & Safe Deposit Bank's Assigned Est., 166 Pa. 622, it was not alleged that the company was insolvent when the money was received, or that it was a trustee ex maleficio in regard thereto. In Com. ex rel. v. State Bank of Pittsburg, 216 Pa. 124, no money was received, the draft which was sent for collection being simply charged against the drawer's deposit account. Com. ex rel. v. Tradesmen's Trust Co. (No. 2), 250 Pa. 378, was a case where the trust company was entitled to collect and hold the money which was sought to be the basis for a preferred claim. In Webb v. Newhall, 274 Pa. 135, under facts much like those appearing here, the preference was allowed, and that decision is controlling. The statement (page 138) that "an entirely different question would be presented......had the agent been a

banking institution," is shown in Conneautville Bank's Assigned Est., 280 Pa. 545, 548, to apply only where "the usual relation between bank and depositor should exist, or the relation between them should be the [ordinary one] of trustee and cestui que trust," which is not the situation in the present case.

The judgment of the Superior Court is reversed and that of the Court of Common Pleas of Allegheny County is reinstated and affirmed.