## Cameron, Secretary of Banking, v. Bankers Trust Company.

*Ernest Lowengrund*, Assistant City Solicitor, and *Augustus Trask Ashton*, City Solicitor, for petitioner, City of Philadelphia.

*David Wallerstein*, for petitioner, Fireside Building and Loan Association.

*Ruby R. Vale*, for petitioner, Baily.

*Robert von Moschzisker*, for Secretary of Banking.

FINLETTER, P. J., March 3, 1931.—The Secretary of Banking has taken possession of the business of the Bankers Trust Company under section 21 of the Banking Act of 1923. The record does not show whether the Secretary is continuing or has suspended the business of the company, and it is of no importance in this connection. The fact which does concern us is that the Secretary has not yet filed his account. This being so, we are of opinion that all of the above mentioned petitions are premature.

The petition of the City of Philadelphia asks for the repayment to it of a deposit of $200,000 received by the officers of the trust company when, it is alleged, they knew that the company was insolvent. Upon this state of facts a trusteeship *ex maleficio* would arise; and it is upon this basis that the petitioner makes its claim.

The other two petitions are those of depositors, who are also debtors, of the trust company. They pray for a decree permitting the set-off of their deposits against their debts.

It will be observed that all of the petitions raise questions affecting the distribution of the trust fund in the hands of the Secretary.

A reading of the Banking Act discloses its purpose to be to create a method for the winding up of insolvent banks in close analogy to that of a receivership in equity. Indeed, the act provides (section 29) that the Secretary shall have all the powers of a receiver in equity. He ousts and supersedes receivers who may have been appointed by the courts.

The analogy of the machinery provided by the act to that of an equity court is complete. The inventory and appraisement of the fund, possession of the property, the right to sue and be sued, the filing of an account, the presentation of creditors' claims at the audit of the account, the disposition of them by the court are all provided for, in close analogy to the methods of a court of equity in cases of receiverships. Helpful methods of proof of claims and disposition of funds belonging to express trusts are added, but these do not affect the general scheme we have referred to.

The relationship, then, of the Secretary (receiver) to the creditors is that of stakeholder to the owners of the fund. The duty of the Secretary is to collect and conserve the fund as a whole and to resist on behalf of the *cestuis que trustent* attacks upon it. He has no voice or power over distribution or over the allowance or assessment of claims of creditors. Whether or not a certain claim shall be allowed or reduced is a question which interests only the other creditors whose claims will be ratably affected. The allowance of a claim is a matter for the court at a time when all distributees can be heard, and from the decree then pronounced the distributees "alone have the right to appeal:" Cameron *v.* Carnegie Trust Co., 292 Pa. 114, 117. If they alone have the right of appeal, it follows that they alone have the right to be heard in the Common Pleas.

The consent of the Secretary or his agreement upon the subject of distribution is, therefore, beyond his functions and of no importance. The only opportunity that the parties really interested in distribution have for presenting their views is at the audit of the Secretary's account.

We cannot, therefore, pass upon the merits of the claims of the petitioners in these cases because the persons who would be affected by our judgment are not parties to the proceeding and have had no opportunity to be heard.

The argument that the Secretary, as receiver, represents them is not sound. He does not represent any particular creditor. He represents the whole fund. His duty is to collect, conserve and administer, not to distribute.

We have spoken above without reference to any particular section of the act. It is suggested that the Secretary is empowered to enter into an agreement on the subject of distribution by the terms of section 30 of the act, or rather that he has the right to appeal to the court for instruction upon that subject. Supposing that were so, the court would not act unless it had all persons interested, *i. e.*, all distributees before it, as is not the fact in the instant case. Section 30 [as amended] provides:

"The court having jurisdiction shall have power to make and enforce any and all orders necessary and appropriate to enable the secretary to discharge his duties in connection with the business, property and affairs of any corporation or person taken into possession by the secretary under the provisions of this act, upon petition of the secretary, acting personally or through his duly authorized deputy, setting forth the facts; and the court shall also have the power, upon petition of the secretary, acting personally or through his duly authorized deputy, to order and direct other corporations or persons in possession of assets or property belonging to the corporation or person in possession of the secretary to transfer or convey said property or assets to the

secretary, and to execute and deliver any and all necessary instruments in writing to accomplish that purpose."

We are of opinion that this section was not intended to apply to questions of distribution, but only to questions which may arise in the administration of the estate. Where there are presented to the Secretary situations in which he is obliged to choose between two methods of administration, he may have the advice of the courts. One such case is mentioned in the act, that of the abandonment of worthless or costly assets. Another, no doubt frequently presented, problem is the settlement of cases brought by the Secretary in behalf of the fund. It was the purpose, we think, of section 30 to permit the Secretary to do what the ordinary receiver frequently does, apply to the court for its advice in such and analogous situations. Proposed sales of assets are another example. We are, therefore, of opinion that section 30 does not empower either the Secretary or the court to pass upon questions of distribution in advance of the audit of the Secretary's account.

In Cameron v. Carnegie Trust Co., 292 Pa. 114, 118, Mr. Justice Simpson says: "This [section 40] is the only section of the act which provides for a preliminary determination regarding any claim on the funds in the hands of the Secretary, and, hence—*expressio unius est exclusio alterius*—excludes the idea of a right to so proceed in any other instance."

It is perhaps unnecessary to point out that the application to the court (under section 30) to "make and enforce" orders is limited to "orders necessary and appropriate to enable the Secretary to discharge his duties in connection with the business, property and affairs of the corporation." This, it will be observed, adds nothing to his duties, which do not, as we have elsewhere pointed out, include distribution.

What we have said disposes of the petitions of the Fireside Association and Robert M. Baily.

The petition of the city presents an additional question, which is, whether or not section 40 permits us at this time to pass upon the subject therein raised, that is, whether a trust *ex maleficio* is within the terms of that section, which provides:

"*(a)* Taking Possession by Secretary.—Whenever the secretary takes possession of the business and property of a corporation or person in accordance with the provisions of this act, he shall also take possession of all funds, property and investments held by such corporation or person in any fiduciary capacity, but shall keep the same separate and apart from the assets thereof."

"*(c)* Settlement Without Accounting.—In any instance where there shall be no dispute as to the amount or identity of such funds, property or investments, and all parties in interest are *sui juris* and so request in writing, the secretary may, without filing of an account, transfer, pay over and deliver to such substituted fiduciary all funds, property and investments of the particular trust, taking from parties and such substituted fiduciary a receipt and release in full, which shall discharge the secretary and such corporation or person from any further liability in the premises.

"*(d)* Jurisdiction of Disputes as to Identity of Trust Fund.—In any instance where there shall be a dispute as to the identity of alleged trust funds, property or investments, either because the same have become or are alleged to have become mingled with other funds, property or investments, or otherwise, the court having jurisdiction of the liquidation proceedings shall have exclusive jurisdiction to determine such dispute.

"*(e)* Accounting.—In all other instances, the secretary shall, with the least possible delay, prepare and file in the courts having jurisdiction thereof the accounts of such corporation or person in such fiduciary capacities, and shall

transfer, pay over and deliver the balances, determined upon such accounts to be due, in accordance with the orders and decrees of such courts."

In deciding the question before us, we have the benefit of the opinion of Mr. Justice Simpson, in Cameron *v.* Carnegie Trust Co., 292 Pa. 114, 117. The Supreme Court, through him, there said: "Section 40 of the Banking Act of 1923 . . . obviously refers only to technical and continuing trusts, for it prescribes that substituted fiduciaries shall be appointed, in place of the insolvent banking institution, to take over and thereafter administer the trust."

In the case cited the petitioning creditor had deposited a check solely for collection in the insolvent bank. The latter collected the proceeds and mingled them with its own moneys. It had, of course, no right to do so. At most, it could have collected and then set apart the proceeds.

After stating the effect of section 40, as above quoted, the writer of the opinion then proceeded: The relation between the bank [the petitioner] and the trust company was not the ordinary one of debtor and creditor, but that *of principal and agent* . . . and the *trust is an express one.*" He added that a trusteeship *ex maleficio* arose out of the misappropriation. The claim of the petitioner was allowed.

It is to be noted that in the cited case the account of the Secretary had already been filed and the claim of the petitioner made at the audit. In addition, a petition was presented. In this state of the case counsel for the Secretary and for the insolvent company asked the Supreme Court "to decide the case on the merits, irrespective of the procedural points;" that is, whether the time to raise the issue was the settlement of accounts, and whether the Secretary had any standing to appeal the case. While the Supreme Court regarded itself as "excused from deciding these points," it went on to state what was the proper procedure. "It may be well to state that the proper procedure on questions affecting a distribution of the funds collected by the secretary is to present a claim when his account has been filed and is before the court, at which time all the distributees can be heard, and from the decree which follows they alone have the right to appeal," citing Cameron *v.* City Bank of York, 284 Pa. 187. The discussion of section 40, which we have quoted above, follows.

We infer from the emphasis with which Mr. Justice Simpson quotes and comments upon the limitation of section 40 to "technical and continuing trusts," and from his care in pointing out that the "relationship of principal and agent" arose from the delivery of the check for collection only, and from his statement that the trust was an *express one,* that he regarded an express trust as coming within section 40. Certainly a trust *ex maleficio* is not an express trust, but one arising *in pais,* out of facts.

That the trustee appropriated the trust fund to its own use added nothing to the relationship of trustee which already existed. The agent was as fully a trustee before he misapplied the fund as he could be. His misapplication added nothing to his status as trustee. The reference, then, to his becoming a trustee *ex maleficio* by his subsequent act neither adds to nor subtracts from his status as trustee. If he came within section 40 as an express trustee, the court had jurisdiction to hear the petition under that section.

It is also, we think, apparent that section 40 is not limited to such formal trusts as those arising out of deeds or wills. The language is: "He shall take possession of all funds . . . held by such corporation in any *fiduciary capacity.*" The provision cited by Mr. Justice Simpson for the appointment of substituted trustees then follows. The net effect of the provisions of the act and the interpretation of it by the Supreme Court is to limit the effect of

section 40 to that which Mr. Justice Simpson gives it; that is, to all *express trusts*.

It seems to us, therefore, from a reading of the act and of the case cited, that trusts *ex maleficio* do not come within the provisions of section 40. We think the other distributees have a right to be heard upon the subject of the existence of such a trusteeship, and that in their absence, as parties to these proceedings, we may not pass upon the question.

Coming to the facts of the city's position, no question of agency or express trust exists. The city and the trust company were depositor and bank. In the absence of other facts, the bank had a right to mingle the deposited check with its own funds. But on the facts proven in the testimony, to wit, the receipt of the deposit after 12 o'clock on Saturday, Dec. 20, 1930, when the officers must have known the insolvent condition of the bank, within the meaning of insolvency as used in Com. ex rel. *v.* Tradesmen's Trust Co., 237 Pa. 316, 319, a trusteeship *ex maleficio* certainly arises. And if these facts are proved at the settlement of the Secretary's account, the city will be entitled to recover the full deposit.

We may also add our opinion that, on the facts shown in the other two petitions and answers, the petitioners are clearly entitled to set off their deposits against their debts. The reciprocal claims, in our opinion, are mutual.

We must not, however, decide this, because we have not heard all the interested parties.

For these reasons, we must now dismiss the petitions without prejudice to the right of the claimants to present their claims at the audit of the Secretary's account.