## In re Mechanics Trust Company

*Brown & Williams*, for exceptant; *Mark T. Milnor*, contra.

WICKERSHAM, J., May 1, 1933—Central-Penn National Bank of Philadelphia excepts to the classification of its claim in the sum of $7,765.57 (as reduced

by payments), as a claim of the first class, "collection accounts", instead of as a claim entitled to priority and to payment in full, in the first account of William D. Gordon, Secretary of Banking of the Commonwealth of Pennsylvania in possession of the business and property of Mechanics Trust Company, Harrisburg, Pa.

Counsel have agreed to a stipulation as to facts as follows:

### Facts

1. On October 23, 1931, William D. Gordon, Secretary of Banking of the Commonwealth of Pennsylvania, took possession of the business and property of Mechanics Trust Company, and has been in charge of the affairs and in possession of the assets of said bank since that date.

2. By an arrangement dating back to 1907, it was agreed between Mechanics Trust Company of Harrisburg (hereinafter called the "trust company") and Central-Penn National Bank of Philadelphia (hereinafter called the "bank") that the said trust company was to act as the bank's agent for the collection of all Harrisburg items, including those payable at said trust company. It was further agreed that the trust company should receive a collection fee of ⅛ of 1 percent on all items collected by it for the said bank. After 1914, this charge was eliminated.

The procedure contemplated by this agreement was for the bank to forward by mail to the trust company all items for collection in Harrisburg. The bank would then charge the amount of such items on its books against the trust company and when the trust company received the proceeds on collection of such items, it would accordingly credit the bank's account with such amount. In the event that an item was dishonored, the trust company would charge such item back and return to the bank the dishonored paper. Settlements were made every Tuesday and Friday by a check of the trust company drawn against its deposit account in the bank, payable to the said bank.

3. After the trust company had collected the money and before remittance on the settlement days (i. e., Tuesday and Friday), the trust company had the use of the money for the intervening period of time, but no interest was ever paid by the trust company to the bank as consideration for the use of such money by the trust company. The proceeds of the collections received by the trust company were not subject to check or draft by the bank and were not segregated by the trust company.

4. Prior to the insolvency of the trust company, the bank sent certain items to the trust company for collection. All these items were endorsed in the customary manner, to wit: "Pay any bank or banker. All prior endorsements guaranteed. Central-Penn National Bank."

5. Prior to the date the Secretary of Banking took possession of the trust company, the sum of $7,765.57 had been collected by the trust company for the account of the bank, but such sum had not been remitted to the bank. At the time the assets of the closed bank passed into the hands of the Secretary of Banking, this sum was included therein, and the general assets of the bank were augmented to the extent of $7,765.57.

6. The said trust company had at all times, between the date the money was collected by the trust company and the date the Secretary of Banking took over the assets and business of the defunct trust company, funds sufficient to pay the claim of the bank.

7. Within the time prescribed by The Banking Act of 1923, the said bank filed a claim with the Secretary of Banking in possession of the business and property of the trust company, requesting that $7,765.57, representing the proceeds

of collection items hereinbefore mentioned, be classed as a preferred claim. This claim was disallowed as specifically set forth on page 724 of the first and partial account, which reads as follows:

"List of Claims of the First Class—Collection Accounts.
Central-Penn National Bank of Philadelphia     $7765.57."

8. It was agreed between F. M. Balsbaugh, Special Deputy Secretary of Banking in charge of Mechanics Trust Company, of Harrisburg, Pa., and Central-Penn National Bank of Philadelphia that the said bank should accept all dividends to be declared by said trust company, payable to its depositors, without prejudice to its legal right to enforce its claim as a preferred creditor and apply same as a payment on account thereof. A copy of said agreement is attached to the stipulation of facts, marked exhibit "A", and made a part thereof.

The question involved is: Are the general assets of the trust company impressed with a trust in favor of the bank to the extent of $7,765.57 so as to create a priority status?

## Discussion

The items sent for collection by the exceptant to Mechanics Trust Company were endorsed "pay any bank or banker". Such endorsement "shall be deemed a restrictive indorsement and shall indicate the creation of an agency relation in any subsequent bank to whom the paper is forwarded unless coupled with words indicating the creation of a trustee relationship": Bank Collection Act of June 12, 1931, P. L. 568, sec. 4. Under the common law, it was held that such an endorsement is sufficient to put one on inquiry as to whether the endorsee is the owner or only an agent for collection: Philadelphia National Bank v. Fulton Nat. Bank, 25 F. (2d) 995, 996, where it was held:

". . . The form of indorsement, 'Pay to any bank or banker,' is commonly used by banks in forwarding paper for collection, so commonly used as fairly to put one on inquiry whether the indorsee is really the owner or only an agent for collection, and to charge all persons with the knowledge that would have been gotten by inquiry."

Applying the law as above stated to the facts agreed upon, we find that Mechanics Trust Company never acquired an absolute title to the items forwarded to it by Central-Penn National Bank. When it collected the item, the said trust company received no greater title to the proceeds thereof than it had in the paper itself, and the relationship remained unchanged—that of principal and agent. By agreement, the funds collected were not subject to check or draft by the forwarding bank, nor was any interest paid to the owners of the item by the agent. We think the agreement between them clearly shows that the relationship of principal and agent before and after collection was the intention of the parties: 6 Michie on Banks and Banking 61.

This relationship of principal and agent continued after the mingling of the funds, and, as the money never became a part of the assets of the bank, the general creditors are entitled to no share in its distribution: In re Susquehanna Title and Trust Company, 16 D. & C. 530. Where a note, check, or draft has been sent to a banking institution for collection and remittance only, the relation between the sender and collector is that of principal and agent, and the trust is an express one: Cameron v. Carnegie Trust Co., 292 Pa. 114; and the courts will not enforce a custom which is bad; hence they will not sustain one which attempts to justify an insolvent banking institution in mingling with its own funds money collected by it as agent only: Ibid.

It appears from the stipulation of facts that there was an arrangement between the bank and the trust company dating back to 1907, whereby the trust

company was to act as the bank's agent for the collection of all Harrisburg items, including those payable at the trust company; but it was further agreed that the trust company should receive a collection fee of ⅛ of 1 percent on all items collected by it for said bank; after 1914 this charge was eliminated.

The procedure alleged in this agreement was for the bank to forward by mail to the trust company all items for collection in Harrisburg. The bank would then charge the amount of such items on its books against the trust company. When the trust company received the proceeds on collection of such items, it would accordingly credit the bank's account with such amount. Settlements were made every Tuesday and Friday by a check of the trust company drawn against its deposit account in the bank, payable to the said bank. The trust company had the use of the money for the intervening period of time, but no interest was ever paid by the trust company to the bank as consideration for the use of such money by the trust company. The proceeds of the collections received by the trust company were not subject to check or draft by the bank and were not segregated by the trust company.

It further appears by paragraph 6 of the stipulation of facts that the trust company had at all times, between the date the money was collected by the trust company and the date the Secretary of Banking took over the assets and business of the defunct trust company, funds sufficient to pay the claim of the bank. As we have pointed out, this question is beyond controversy, as it has been agreed upon. In matter of International Milling Company, 259 N. Y. 77, it was held, where the drawer of a draft payable to a bank deposits it in the bank with an attached paster reading that the draft is not to be treated as a deposit and not commingled with the funds of the bank, the bank remains a bailee of the proceeds even after they have been mingled with the bank's funds and credited to the drawer's account; if the bank fails while the proceeds are still in its hands the drawer of the draft is entitled to payment in full.

In the instant case we think the agreement between the trust company and the bank has the same effect, especially since it was always understood that the trust company was the bank's exclusive agent for the collection of Harrisburg items. The mere fact that the defunct bank did mingle the funds in violation of its agency relationship should not deprive the owners of the items of priority on distribution. Since the agent bank did mingle the proceeds in violation of its agency contract, a trust ex maleficio would be created, and the case would be governed by Cameron v. Carnegie Trust Co., supra. See also In re Dollar Title and Trust Company (No. 2), 17 D. & C. 282, and Mehler's Appeal, 310 Pa. 25.

We think also that the claim of Central-Penn National Bank is within the provisions of section 13 of the Bank Collection Act, which provides, in paragraph (c) (p. 572):

"Where an agent collecting bank, other than the drawee or payor, shall fail or be closed for business as above, after having received in any form the proceeds of an item or items entrusted to it for collection, but without such item or items having been paid or remitted for by it either in money or by an unconditional credit given on its books or on the books of any other bank, which has been requested or accepted so as to constitute such failed collecting or other bank debtor therefor, the assets of such agent collecting bank which has failed or been closed for business as above shall be impressed with a trust in favor of the owner or owners of such item or items for the amount of such proceeds, and such owner or owners shall be entitled to a preferred claim upon such assets, irrespective of whether the fund representing such item or items can be traced and identified as part of such assets or has been intermingled with or converted into other assets of such failed bank." See also Bassett, Bank Commissioner, v.

The City Bank and Trust Company, 115 Conn. 1, 160 Atl. 60, and Taylor v. Union Trust Co., 185 Ark. 128, 46 S. W. (2d) 18.

It will be observed that the claim of the bank is that it is entitled to a preferred claim upon the assets of the trust company, unless (*a*) such item or items have been paid or remitted by the trust company to the bank (it is agreed that the collections received by the trust company have not been paid), or (*b*) an unconditional credit has been given on the books of the trust company which has been requested or accepted so as to constitute such failed collecting or other bank debtor therefor.

Referring again to the procedure as contained in the second paragraph of the stipulation of facts, it appears that the bank forwarded "by mail to the trust company all items for collection in Harrisburg. The bank would then charge the amount of such items on its books against the trust company, and when the trust company received the proceeds on collection of such items it would accordingly credit the bank's account with such amount." Clearly this was only a bookkeeping credit and debit and in no way created a debtor relation from the trust company to the bank. We cannot follow the contention of counsel for the liquidating receiver that these bookkeeping entries constituted the trust company a debtor to the bank; therefore we conclude that the bank has a preferred claim upon the assets of the trust company for the amount collected and not paid, and this is especially true as it is conceded that there were sufficient funds in the trust company to pay the bank the total amount collected at the time the Secretary of Banking closed the trust company and proceeded with its liquidation.

Passing for the present the contention of counsel for the receiver that no trust relationship exists between the bank and the trust company, we are not prepared to agree with the third contention of counsel that the Bank Collection Act of 1931 does not entitle the claimant to a preference. We have reached a different conclusion, as heretofore expressed. Counsel rely upon Metropolitan Life Insurance Co.'s Appeal, 310 Pa. 17. We do not follow the conclusion that this case is controlling. It there appeared that the trust company obtained and sold mortgages to the insurance company and acted as its agent in the collection of the money due under the mortgages, and it was held that the balances credited to the account of an insurance company were not deposits within the meaning of the Act of May 23, 1913, P. L. 354. In said case, it also appears that an officer of the trust company obtained and sold mortgages to an insurance company and misappropriated the money received from the trust company for the sale of such mortgages without the knowledge of the trust company, and that the assets of the trust company were not increased by such money; and it was held that the insurance company was not entitled to a preference as to such money after the insolvency of the trust company on the ground that the company was a trustee ex maleficio. How the ruling of the Supreme Court in this case aids the trust company in the instant case we are not able to understand.

Counsel for the liquidating receiver also depend upon Parkesburg Bank's Appeal, 6 W. N. C. 394. This opinion was written April 4, 1878, when the practice among banking institutions differed materially from that which now prevails. There is also this distinction: In Parkesburg Bank's Appeal it was held that "the sums realized were placed to their credit and forwarded to them every week, although they could at any time have drawn on account thereof." It was also held "that in a distribution of the assets of the collecting bank by an assignee for the benefit of creditors, under the Act of April 26, 1844, § 9, they were not entitled to come in as depositors." Certainly not, under the Act of 1846.

In the instant case the Secretary of Banking admits that the bank was entitled to share as a depositor in the assets of the trust company in paragraph eight of the stipulation of facts, in which it was agreed that the bank should accept all dividends to be declared by said trust company payable to its depositors, without prejudice to its legal right to enforce its claim as a preferred creditor and to apply the same as a payment on account thereof.

Counsel for the receiver also depend upon Lipschutz v. Phila. Savings Fund Society et al., 107 Pa. Superior Ct. 481. What this case decides is that where checks were deposited for collection, and the depositary, after endorsing the checks "pay any bank or banker or trust company", transferred them to defendant, receiving full consideration, and thereafter became insolvent before paying the proceeds to depositor, the depositor could not recover checks from defendant, since ownership of the depositor had ceased. Depositing checks with a forwarding bank for collection constitutes the forwarding bank depositor's agent. The question before the Superior Court was whether the plaintiff could recover the checks, not the funds derived from the payment of the checks. This decision can have no controlling effect upon the instant case.

We think the Act of 1931 should be broadly construed. The title is: "An act to expedite and simplify the collection and payment by banks of checks and other instruments for the payment of money." The title of an act is part of the act and aids, if need be, in its construction: Moore v. Chartiers Valley Water Co., 216 Pa. 457.

This act is obviously intended, as stated in its title, to cut through the technical considerations which in many States resulted in expensive and uncertain litigation, because the technique of the common law was not adapted to handling commercial banking situations of the present day. The test, we think, is whether the assets of the collecting bank are in fact augmented, under what may be called circumstances of collection. Present-day banking practices are infinitely swifter and cheaper than old-time practices in that items can be sent directly or comparatively directly. The law has kept pace with the development in the act under consideration by providing that such items are impressed with a trust, in order to make possible the continuance of such economical practices.

It is clear to us that the forwarding bank had no deposit account with the collecting bank and that, in the language of the act, the actual relationship is that of agency, and once the collection has been made and the collecting bank's assets actually augmented either in specie or in credit, the depositors are not harmed by impressing that augmentation with a trust.

Counsel for the receiver also rely upon Commercial Bank of Pennsylvania v. Armstrong, 148 U. S. 50, which was decided in 1893, long before present banking practices had grown up and before a great majority of the acts protecting not only depositors but this exact kind of collection activity, as against common creditors. The opinion explicitly states that the decision is grounded on the then existing customs as between banks, which were far different from those of the present day.

We are of opinion, therefore, that the bank is entitled to a priority status and entitled to recover and be paid the full amount of its claim.

And now, May 1, 1933, it is ordered and adjudged that the exceptions of Central-Penn National Bank of Philadelphia to the account of William D. Gordon, Secretary of Banking, in the matter of Mechanics Trust Company, Harrisburg, Pa., be sustained; the question of law heretofore stated must be answered in the affirmative; and the Secretary of Banking in charge of the liquidation

of Mechanics Trust Company, Harrisburg, Pa., is directed to pay to the Central-Penn National Bank of Philadelphia the sum of $7,765.57, after deducting therefrom the payments heretofore made to said bank by the Secretary of Banking. Exception allowed to the Secretary of Banking.

From Homer L. Kreider, Harrisburg, Pa.