161      259
f216    ¹126

161      259
37SC ¹184

# Freiberg et al., Appellants, *v.* Stoddard, Assignee of Rockafellow & Co.

*Trusts—Following specific trust funds—Banks.*

To entitle one claiming to be a trust creditor to preference in the distribution of an assigned estate, he must trace the trust money into some specific property, or into some particular fund or account of the assignor with which the latter has mingled it.

Plaintiffs drew a draft on a debtor and indorsed it to the order of a bank for collection. The drawee was a depositor in the bank. The draft was accepted, and the account of the drawee was charged therewith. The bank, which was insolvent at the time, sent to plaintiffs a draft on a bank in another city. Before this draft was presented for payment the bank failed, and made an assignment for the benefit of creditors. It did not appear that the bank received any money as the proceeds of the draft deposited for collection, or that any part of the money in the bank had ever been set apart, or in any manner appropriated to the payment of the draft. *Held*, that plaintiffs were not entitled to priority of payment before the general creditors of the bank.

Argued April 11, 1894. Appeal, No. 442, Jan. T., 1894, by plaintiffs, Joseph Freiberg and Abraham Freiberg, trading as J. & A. Freiberg, from order of C. P. Luzerne Co., Oct. T., 1893, No. 2, dismissing bill in equity. Before WILLIAMS, MCCOLLUM, MITCHELL, DEAN and FELL, JJ. Affirmed.

Bill in equity to restrain assignee for benefit of creditors from paying out money.

The facts appear by the opinion of the court below, as follows, by RICE, P. J.:

" On Jan. 25, 1893, the plaintiffs drew a draft to their order on M. Rosenbluth, for $123.73, at one day sight, and on Jan. 27th drew a similar draft for $208.14 on Sol. Hirsch, and indorsed the same : ' Pay to the order of F. V. Rockafellow & Co., for collection for account of J. & A. Freiberg.' The drawees were depositors in the bank of F. V. Rockafellow & Co., and each had a balance in the bank, more than sufficient to pay the draft drawn on him. The first mentioned draft was accepted on Jan. 27th, and the account of the drawee was charged therewith on Feb. 7th. The other draft was accepted by the drawee, and his account was charged therewith on Feb. 1st. On Feb. 7th,

F. V. Rockafellow & Co. sent to the plaintiffs drafts on the City National Bank of Philadelphia for the respective amounts of the foregoing. At this time, and for a long time prior thereto, F. V. Rockafellow, who was doing business under the name of F. V. Rockafellow & Co., was insolvent. On Feb. 8th the doors of the bank were not opened, and on Feb. 11th Rockafellow made an assignment for the benefit of creditors to the defendant. The two drafts sent to the plaintiffs were presented for payment and protested on Feb. 11th, and are now in the plaintiffs' hands. When the assignee took charge of the property of the assignor he found cash in the vaults of the bank, but there is a dispute as to the amount, the plaintiff alleging that it was $13,000, and the defendant alleging that it was only $5,000.

" The plaintiffs claim that, of this money, $331.87, the amount of the drafts collected as aforesaid, by F. V. Rockafellow, belongs to them, and they pray for a decree enjoining the assignee from distributing the same amongst the general creditors and ordering and directing him to pay it to the plaintiffs.

" The legal propositions upon which the plaintiffs rely are : (1) That by reason of the restrictive indorsements, the title to the drafts, and to the proceeds arising from the collection thereof, was never in F. V. Rockafellow ; (2) that the moneys passed into his hands in trust for the plaintiffs, and also passed into the hands of the assignee impressed with the same trust; (3) that the plaintiffs have a right to follow the proceeds of the collection so long as the same can be identified; (4) that they have sufficiently traced and identified the same by showing that the cash on hand, at the time the bank closed, exceeded the aggregate of these collections.

" 'An indorsement for collection is restrictive and carries no power of sale with it. In such case the indorsee is a mere agent for the indorser, and such indorsement has been said not to amount to a transfer of title. So an indorsement " for collection for my account," or "for account of it," is restrictive, and does not pass the title or the right to the proceeds of the instrument. The indorsee takes the instrument as agent or trustee for the indorser, and if he disposes of it for his own use, the indorser may recover from the purchaser the amount collected on it, or he may recover the bill itself in an action

of trover.   By such restrictive indorsement the indorsee takes
the instrument subject to the trust created:' Randolph on
Com. Paper, § 726; Daniels on Neg. Inst. § 698; White v. Nat.
Bank, 102 U. S. 658; Sweeney v. Easter, 1 Wall. 166; Bank
v. Gregg, 79 Pa. 384; Hackett v. Reynolds, 114 Pa. 328.   The
general doctrine regarding the right to follow trust funds is
thus stated in 2 Story, Eq. Jur. §§ 1258, 1259, 13th ed.: 'The
general proposition which is maintained both at law and in
equity upon this subject is, that if any property in its original
state and form is covered with a trust in favor of the principal,
no change of that state and form can divest it of such trust or
give the agent or trustee converting it, or those who represent
him in right (not being purchasers for value without notice),
any more valid claim in respect to it than they respectively had
before such change. . . . It matters not in the slightest degree
into whatever other form different from the original the change
may have been made, whether it be that of promissory notes,
or of goods, or of stock; for the product of the substitute for
the original thing still follows the nature of the thing itself, so
long as it can be ascertained to be such.   The right ceases
only when the means of ascertainment fails.'   See also Bisph.
Eq. § 86; Farmers etc. Bank v. King, 57 Pa. 202; Sadler's
Appeal, 87 Pa. 154; Sheetz v. Marks, 2 Pears. 302, and cases
cited; First Nat. Bank etc. v. Bache, 71 Pa. 213; cases cited
in notes to Dyer v. Dyer, 1 L. C. in Eq. *250, Bl. ed.   If,
therefore, when these drafts were accepted, F. V. Rockafellow
had withdrawn so much money from the general funds of the
bank and had invested it in other property, this would have
been a very plain case for the application of the rule above
stated.   So, also, there would be no difficulty, if he had placed
the money in an envelope, or had otherwise set it apart and
designated it; and, in that case, the fact that some of the bills
or coins were taken out and others put in their place would
not destroy the substantial identity of the fund, so as to prevent
the cestui que trust from following and recovering it.   'In
regard to money, substantial identity is not oneness of pieces
of coin or of bank bills.   If an agent to collect money puts the
money collected into a chest where he has money of his own,
he does not thereby make it all his own, and convert himself
into a mere debtor to his principal.   The principal may, by the

law, claim out of the chest the sum which belonged to him before the admixture:' Pennell v. Deffell, 4 De G., M. & G. 372, quoted with approval in Farmers Bank v. King, 57 Pa. 202. But in this case no money was added to the assets of the bank, and no part of the money in bank was separated or set apart or in any way appropriated to the payment of the drafts, and, so far as appears, the assignor did nothing to indicate an intention on his part to treat any portion of the funds in bank as different from the remaining deposits. Assuming that, at the time the drafts were accepted and the accounts of the drawees were charged therewith, he had on hand sufficient money which he could rightfully apply to their payment (a fact, which, by the way, does not affirmatively appear), his failure to remit the amount to the drawers was a breach of duty, but it does not necessarily follow that the funds in bank, much less subsequent deposits, became impressed with a trust or charge in favor of the drawers which would give them a preference on distribution. A trust creditor is not entitled to preference over general creditors of the insolvent merely on the ground of the nature of the claim. To authorize such a preference, some specific recognized equity founded on agreement or relation of the debt to the assigned property must be shown, which entitles the claimant, according to equitable principles, to preferential payment: Matter of Cavin v. Gleason, 105 N. Y. 256. The plaintiffs therefore must show something more than a breach of duty on the part of their agent in order to put their claim in relation to the fund which went into the hands of the assignee on a different footing from those of other depositors. In determining whether they have shown such title to the portion of the cash assets claimed by them as entitles them to the relief prayed for, it should be remembered that this is not the case of a trustee mingling trust money with his own, and therefore we are of opinion that the decisions relating to a charge or lien on the whole fund in such a case do not apply.

"Let us suppose that the drawees had paid Rockafellow & Co. the amounts of the drafts in cash, and that the banker had used it in paying debts, would the drawers have a charge or lien on the cash found in his vaults, or against his general estate? We concede that some of the cases cited by the plaintiffs' coun-

sel seem to hold that they would, but these decisions are not put upon the ground that the trust moneys have been .thus traced into a specific fund or property, but upon the ground that according to the doctrine of modern equity it is not necessary to trace them into some specific property in order to enforce the trust, and that it is sufficient if they can be traced into the estate of the defaulting agent or trustee, thereby swelling the volume of his assets, or were used in paying debts : McLeod v. Evans, 66 Wis. 401; Francis v. Evans, 69 Wis. 115; Bowers v. Evans, 71 Wis. 133. These as well as the other cases belonging to the same class are elaborately considered in Phila. Nat'l Bank v. Dowd, 2 L. R. An. 480, where it was held that if a bank, on receiving from another bank commercial paper ' for collection and immediate return,' makes the collection and mingles the money collected with its general funds, and thereafter becomes insolvent, having cash on hand sufficient to cover such collection, the fund collected must be held to have so lost its identity that the cash on hand will not be impressed with a trust lien in favor of the bank for which the collection was made as against general creditors. We are not required to go so far as that in this case, but we cannot escape the conclusion that the doctrine of the Wisconsin cases is a departure from the rule laid down in Story, which has thus far been adhered to by the courts of our own state, and goes beyond anything actually decided in the celebrated case of Knatchbull v. Hallett, 13 Ch. Div. 696. In Thompson's Appeal, 22 Pa. 16, it appeared that an individual, as executor, received moneys which he used in his own business, and, also being otherwise indebted, made an assignment for the benefit of creditors. The court below held that the heirs of the decedent were entitled to a preference. The Supreme Court, after quoting the rule laid down in Story, said : ' It is impossible for a chancellor to lay his hand upon a single article of property, or on a single dollar of money included in the assignment and say that any particular thing or sum of money is either the original property of Seth Matthews's heirs or the product of it. The decree below was therefore erroneous.' This case and the principle upon which it was decided were recognized in People's Bank's Appeal, 93 Pa. 107 ; and in Hopkins's Appeal, 8 Cent. R. 860 ; the point expressly decided was that where there is a failure

to trace trust funds into any specific property of the trustee, they are not entitled to priority of payment over the claims of other creditors. In Cavin v. Gleason, 105 N. Y. 256, it was decided that the use of the funds to pay debts does not entitle the principal or cestui que trust to such preference. See also Milligan's Appeal, 82 Pa. 389; Cross's Appeal, 97 Pa. 471.

" The case we have supposed for the purpose of illustration is not more unfavorable to the plaintiffs than the case at bar. When the assignor charged these drafts against the accounts of the drawees he canceled so much of his indebtedness to them, but did not add a dollar to the fund in bank. It is true his estate was benefited by the transaction, because his indebtedness was thereby reduced, but as he was insolvent at the time such benefit to the estate only equaled the pro rata shares which would have been awarded to the drawees on distribution. If a preferred lien or charge upon the fund in bank is to be recognized upon the ground of the benefit received by the estate or fund through the transaction, such lien or charge ought to be measured by the benefit actually received, and not by the benefit which it would have received, if the fund had been increased by a deposit of an amount equivalent to the amount of the drafts. But if we hold to the rule that, to entitle one claiming to be a trust creditor to preference, he must trace the trust money into some specific property, or into some particular fund or account of the assignor with which the latter has mingled it, we think the plaintiffs have failed, because they have not shown that the assignor received any money as the proceeds of the drafts which he added to and mingled with the general mass of deposits in bank, or that any part of the money in bank was ever set apart, or in any manner appropriated to the payment of the drafts. The case of People v. Merchants' and Mechanics' Bank, 78 N. Y. 269, is so closely analogous to this case that we think it may be referred to as sustaining this conclusion. The fund claimed by the plaintiffs has not merely lost its identity by being 'mixed and confounded in a general mass of property of the same description,' but it never had any distinct identity as a trust fund.

" There are no reported Pennsylvania decisions of the precise question before us, but applying the general principles regarding the right to follow trust funds, as we understand them

to be held in this state, we conclude that the plaintiffs are not entitled to the preference claimed by them. Therefore the motion to continue injunction is denied."

The case was referred to a master, who recommended a decree dismissing the bill. Exceptions and bill dismissed.

*Error assigned* was dismissal of the bill.

*Wm. R. Gibbons, Cist & Kronacher* and *Wm. S. McLean* with him, for appellants.—The title to the drafts and the proceeds arising from the collection of the drafts were never in Rockafellow & Co., but always remained in plaintiffs, because plaintiffs' indorsement on the drafts payable to the order of themselves was "for collection for account of" plaintiffs: Sweeney v. Easter, 1 Wall. 166; White v. Bank, 102 U. S. 658; Bank v. Armstrong, 36 Fed. R. 59; Bank v. Armstrong, 39 Fed. R. 684; 1 Dan. on Neg. Inst. § 698; Randolph on Com. Paper, §§ 726, 727; Hackett v. Reynolds, 114 Pa. 328.

The moneys passed into the hands of Rockafellow in trust for plaintiffs, and also passed into the hands of the assignee impressed by the same trust by reason of the restrictive indorsement aforesaid: Randolph on Com. Paper, § 727; Pennell v. Deffell, 4 De G. M. & G. 372; Knatchbull v. Hallett, 13 Ch. Div. 696; Hart v. Ten Eyck, 2 Johns. Ch. 108; Bank v. King, 57 Pa. 208; Bank v. Ins. Co., 104 U. S. 54.

Having the right to trace the fund, we contend that plaintiffs have done so successfully: Bank v. Hubbell, 117 N. Y. 384; Frith v. Cartland, 2 Hem. & M. 217; Bank v. Peters, 123 N. Y. 27.

Plaintiffs have no standing before the auditor: Williams's Ap., 101 Pa. 474; Okie's Ap., 9 W. & S. 156; Jefferis' Ap., 33 Pa. 39; Wylies & Quail's Ap., 92 Pa. 196; Strickler's Ap., 10 W. N. 535; Frankenfield's Ap., 11 W. N. 373.

The case is ruled by McLeod v. Evans, 66 Wis. 406; People v. Bank, 96 N. Y. 32; Thompson v. Gloucester City Savings Institute, 8 Atl. R. 97; Jones v. Kilbreth, 31 N. E. R. 346; Jamison's Est., 3 Dist. R. 217.

*Henry A. Fuller*, for appellee, not heard, cited: People v. Bank, 78 N. Y. 269; Thompson's Ap., 22 Pa. 16; People's Bank's Ap., 93 Pa. 107; Hopkins' Ap., 8 Cent. R. 860; Mc-

Leod v. Evans, 66 Wis. 406; People v. Bank, 96 N. Y. 32; Bank v. Dowd, 38 Fed. R. 172.

PER CURIAM, April 23, 1894:

We concur in the conclusions reached by the learned master and the court below. If at the time of the assignment the plaintiffs' notes had been found by the assignee uncollected, he should have returned them. If a draft or bond or a specific package of money received in payment of the notes had been found among the assets coming into his hands, it should have been turned over to the plaintiffs. But neither the notes, nor any security nor sum of money received in payment of them came into his hands. He holds nothing which he or the plaintiffs can identify with the notes or trace as a payment of them. This is clearly pointed out in the opinion of the learned judge of the court below, and we think the case may very properly be affirmed upon his opinion.

The judgment is affirmed.