## Commonwealth, ex rel., *v.* Tradesmen's Trust Company.

*Banks and banking — Trusts and trustees — Trust company —
Money for purchase of real estate.*

Where a purchaser of real estate pays over the purchase-money
thereof to a trust company which is to insure the title, and make
settlement with the seller, and the trust company delivers its own
check drawn on itself to the seller for the balance due him, and
the seller through some inadvertence delays in depositing the
check for collection until after the trust company has gone into
the hands of a receiver, the holder of the check is a general credi-
tor of the trust company, and is not entitled to preference as a
depositor under the Act of May 8, 1907, P. L. 192, or as the cestui
que trust of a trust fund.

Argued March 9, 1915.  Appeal, No. 10, March T.,
1915, by William Bryant, from order of C. P. Dauphin
Co., Commonwealth Docket, 1911, No. 219, dismissing
exceptions to auditors' report in case of Commonwealth,
ex rel., John C. Bell, Attorney General, v. Tradesmen's
Trust Company.  Before RICE, P. J., ORLADY, HEAD,
HENDERSON, KEPHART and TREXLER, JJ.  Affirmed.

Exceptions to report of auditors.
The facts agreed upon are as follows:
"William Bryant prior to August 1, 1911, was the
owner of a certain house and lot in the City of Philadel-
phia known as No. 2520 South Sartain street.
"Michele Ruggieri prior to August 1, 1911, agreed
with said William Bryant to purchase said house and
lot and applied to the Tradesmen's Trust Company for

insurance of the title to said property which he was purchasing.

"On August 1, 1911, a settlement was arranged for at the office of the Tradesmen's Trust Company for the purpose of delivering the deed and the payment of the purchase-money and the settlement was attended by the parties or persons representing them. The settlement was attended by M. A. Franey on behalf of William Bryant.

"On August 1, 1911, (at the time set for said settlement), the sum of $1,773.17 was placed with the said Tradesmen's Trust Company on behalf of said Michele Ruggieri for the purpose of distributing it in the settlement and completing the said purchase. No receipt was issued to said Michele Ruggieri for the deposit of said money, but it was placed under the usual conditions and the following is a copy of the form of receipt issued by the said Tradesmen's Trust Company, when a receipt was requested.

No.....        This receipt is not negotiable.

Tradesmen's Trust Company.

$....       Chestnut and Juniper Streets, Philadelphia.

Received of ...................................

..................................... Dollars,

to be applied in settlement of matter No..... viz:......

of premises ...............................

Tradesmen's Trust Company,

By...............

"At the settlement it was found that there was no statement of the amount due the holder of an existing mortgage on the said property and distribution was therefore postponed. On the following day, August 2, 1912, the amount necessary to satisfy this mortgage having been determined, the Tradesmen's Trust Company made distribution as had been agreed upon and sent said check No. 63,678 for $631.42 payable to the order of William Bryant to his said representative, M. A. Franey.

"Said M. A. Franey on the same day sent the said check to the claimant William Bryant. The check was not received by William Bryant personally, but by one of his employees who placed it in Mr. Bryant's desk. By some means unknown the check and letter containing it became hidden behind a partition in said desk and was not found by William Bryant until in the afternoon of September 16, 1911, or in the morning of September 18, 1911. William Bryant attempted to present the check as soon as possible within banking hours, to wit, some time on September 18, 1911, when he found that the said Tradesmen's Trust Company was in the hands of a receiver.

"The said sum of $1,773.17 placed on behalf of said Michele Ruggieri on August 1, 1911, is entered on the cash book of the Tradesmen's Trust Company, under date of August 1, 1911, as cash to the credit of settlement of 2520 South Sartain street.

"The Tradesmen's Trust Company had on hand on September 18, 1911, in cash, $43,011.17, which amount was handed over to the receiver. From August 1, 1911, to September 18, 1911, the said Tradesmen's Trust Company, had a balance in cash on hand at all times in excess of $20,000."

The auditor's report was as follows:

The Act of May 8, 1907 (P. L. 192), under which the fund now before the auditors is to be distributed, provides that distribution shall be made and preferred in the following order, namely:

"1. To pay all deposits in the trust company.

"2. To the payment and discharge of all the remaining liabilities of such trust company or corporation.

"3. The residue, if any, shall be distributed to the shareholders of the trust company or corporation, according to their respective legal rights.

"Provided, however, that all trust money and property shall be kept separate as provided by said act as supple-

mented, as aforesaid, and distributed to the beneficiaries accordingly."

Among the large number of acts which are supplemented and repealed by the foregoing supplemental act, there seem to be but two acts which refer to the proviso in this act, the first being the Act of June 27, 1895 (P L. 399), which, in Section 25, Clause 5, contains the following provision:

"The said companies shall keep all trust funds and investments separate and apart from the assets of the companies and all investments made by the said companies as fiduciaries shall be so designated as that the trust to which such investment shall belong shall be clearly known."

The same provision is contained in the Act of May 9, 1889 (P. L. 159); the phraseology being the same.

The statutes contain a clear direction that trust companies shall keep all trust funds and investments separate and apart from the assets of the companies, and that all investments made by the said companies as fiduciaries shall be so designated that the trust to which the investments belong shall be clearly known; but in none of the foregoing acts is there any provision prescribing the consequences which shall follow if the statutory mandate is not complied with. It may, therefore, be asked what effect the failure to comply with the statutory provision relating to the keeping apart of trust funds has upon distribution as prescribed by the Act of May 8, 1907 (P. L. 192), the proviso in that act stating that trust moneys and property directed to be kept separate "shall be distributed to the beneficiaries accordingly."

There are no statutory provisions relating to the distribution of the assets of insolvent trust companies prior to the Act of May 8, 1907.

In Prudential Trust Company's Assignment, 223 Pa. 409, ELKIN, J., said:

"It may be stated as a general principle that, in the

absence of legislation preferring certain creditors, no such preference exists. The legislature has passed many acts making a preference in the distribution of estates among creditors, this on the ground of public policy or to protect the natural and superior equities of parties; but the burden is always upon him who asserts a preference to point to the authority which gives it. In the present case the learned counsel for appellees attempt to meet this burden under the provisions of the Acts of 1844, 1850 and 1876, all of which relate either to banks of issue or to those of discount and deposit. Trust companies created under the provisions of the General Corporation Act of April 29, 1874 (P. L. 73), and deriving their privileges and powers from the Act of 1889, and other supplemental statutes, are neither banks of issue nor of discount and deposit within the meaning of the law, and, therefore, the acts relied on as giving a preference to bank depositors are not authority for the proposition that the same preference must be given to depositors in a title and trust company, incorporated for a different purpose and being denied by the express language of the statute the right to engage in the business of banking."

Under the facts of that case, the court then considered whether distribution could be made under the Act of May 8, 1907, but, the assignment having been made before the act, the court held that it did not apply to that case. It appears that, at the date of the assignment, the appellant had the right to participate in the fund for distribution along with the depositors and other creditors in such proportion as his claim bore to the aggregate of all the claims. If, however, the Act of 1907 had applied, the depositors would have taken the whole fund and the appellant would have received nothing. It was held that the appellant was entitled to share in the distribution with the depositors and other creditors, without reference to the preference established by the Act of 1907.

Where trust funds have been kept separate and apart there is, of course, no question; but where the funds have been mingled with the general assets of the insolvent trust company and the statutory provision has not been complied with, a question does arise. The statutes are silent as to what shall be done when the trust funds have not been kept separate and apart as provided by the act of assembly, and reference must then be had to the adjudicated cases governing such a situation.

In Thompson's App., 22 Pa. 16 (1853), an individual as executor received moneys which he used in his own business and, being also otherwise indebted, he executed a voluntary assignment for creditors. It was held that the heirs of the decedent were not entitled to a preference in the distribution of the fund in the hands of the assignee, but only to a pro rata share with other creditors. LEWIS, J., said:

"Whenever a trust fund has been converted into another species of property, if its identity can be traced it will be held in its new form liable to the rights of the cestui que trust. No change of its state and form can divest it of such trust. So long as it can be identified, either as the original property of the cestui que trust or as the product of it, equity will follow it and the right of reclamation attaches to it until detached by the superior equity of a bona fide purchaser for a valuable consideration without notice. The substitute for the original thing follows the nature of the thing itself so long as it can be ascertained to be such, but the right of pursuing it fails when the means of ascertaining it fail. This is always the case when the subject-matter is turned into money and mixed and confounded in a general mass of property of the same description."

[Here follows a detailed review of the following cases: Thompson's App., 22 Pa. 16; Miskimins's App., 114 Pa. 530; Columbian Bank's Est., 147 Pa. 422; Freiberg v. Stoddard, 161 Pa. 259; Lebanon Trust & Safe Deposit Bank's Assigned Est., 166 Pa. 622; Solicitors Loan &

Trust Company's Assigned Est., 3 Pa. Superior Ct. 244; Farrell's Assigned Est., 17 Pa. Superior Ct. 240; Jamison's Assigned Est., 163 Pa. 143; Com., ex rel., v. Union Surety & Guaranty Co., 37 Pa. Superior Ct. 179; Miller's App., 218 Pa. 50; Groff v. City Savings Fund & Trust Co., 46 Pa. Superior Ct. 423; Peoples Bank App., 93 Pa. 107; Thompson's App., 22 Pa. 16.]

The doctrine laid down in Thompson's App., 22 Pa. 16 (1853), has been repeatedly maintained by the courts of Pennsylvania, and that case was again cited with approval in O'Neill v. O'Neill, 227 Pa. 334 (1910).

In a number of briefs submitted to the auditors, cases showing a different doctrine in other jurisdictions were cited, but the rule which prevails in the State of Pennsylvania seems to be thoroughly established in accordance with the foregoing cases governing the mingling of trust funds.

The auditors have reconsidered the claim as originally presented, in connection with the additional facts made a part of the evidence in the case by agreement of counsel, and they are of opinion that their original findings, to wit, that the claimant is entitled to $631.42 as a general creditor, must be sustained.

*Errors assigned* were in dismissing the exceptions to the auditor's report.

*Henry Preston Erdman,* for appellant.—Depositing money with a title insurance company for the express purpose of applying it in a certain settlement, creates the title insurance company a trustee for that purpose.

The mingling of the money received under this trust does not prevent the cestui que trust from claiming it out of a general fund as a preferred claim if that fund has always contained a sufficient amount to discharge the trust: Crawford County v. Strawn, 157 Fed. 49; Miller's App., 218 Pa. 50; Groff v. City Savings Fund & Trust Co., 46 Pa. Superior Ct. 423; Com., ex rel., v.

Union Surety & Guar. Co., 37 Pa. Superior Ct. 179; Kleinhaus's Est., 19 Dist. Ct. 278.

In the agreed statement of facts the use of the word "deposit" was avoided at the express request of the auditors on the ground that it might be deemed to have a technical meaning. The transaction was one which is commonly considered a deposit with the company for the purpose of making the settlement. The receipt issued by the company in such cases shows this to have been the practice. The settlement certificate recommends the purchase-price be "deposited." There is nothing inconsistent with this being both a trust fund and a deposit within the popular meaning of deposit for it cannot be better described than to call it a deposit for a special purpose, to wit, to make settlement, and the company in accepting it became a trustee to apply it in accordance with its receipt.

That special deposits of this kind are within the meaning of the Act of May 8, 1907, P. L. 192, and entitled to preference, was held in the case of Comm. v. American Trust Company, 21 D. R. 1064.

See also Com., ex rel., v. State Bank of Pittsburgh, 32 Pa. C. C. R. 51; Girard Bank v. Bank of Penna. Twp., 39 Pa. 92.

*Paxson Deeter,* with him *Samuel M. Clement, Jr.,* for appellee.—Bryant at the time of the failure of the trust company was a general creditor of the trust company: Com. v. American Trust Co., 241 Pa. 153.

Trust funds which have been mingled cannot be followed: Thompson's App., 22 Pa. 16; Lebanon T. & S. Dep. Bank's Assg. Est., 166 Pa. 622.

OPINION BY HEAD, J., October 11, 1915:

Notwithstanding the elaborate argument so earnestly pressed upon us by the able counsel for appellant, we are all of opinion the controlling questions were correctly disposed of by the learned auditor whose report was

adopted and approved by the court below.   This being true, any restatement of the facts or discussion of the legal questions arising therefrom would be but a useless repetition of what has been already well done by the learned auditor.   His report fully vindicates the conclusion he reaches, and we adopt that conclusion for the reasons given in his report.

Decree affirmed.