## Metropolitan Life Insurance Co.'s Appeal.

Argued September 27, 1932. Before FRAZER, C. J., SIMPSON, KEPHART, SCHAFFER, MAXEY, DREW and LINN, JJ.

*W. C. Pettit,* with him *W. C. Leffingwell,* for appellant.—Under the Act of 1913 it is immaterial whether the money was subject to check; it would be sufficient if it was payable at the expiration of a fixed period.

The company became a trustee ex maleficio, and a preference should be allowed: Cameron v. Trust Co., 292 Pa. 114; Trestrail v. Johnson, 298 Pa. 388.

*Thos. H. Armstrong,* counsel in liquidation, with him *William A. Schnader,* Attorney General, and *Shippen Lewis,* Special Deputy Attorney General, for appellee.— The fund involved was set up on the books of the trust company as a matter of accounting and had none of the incidents of a deposit account: Com. v. Trust Co., 241 Pa. 153; Schwartz's App., 291 Pa. 463; Com. v. Trust Co., 250 Pa. 383.

The assets of the trust company were not increased and the moneys claimed are not in the fund for distribution. Appellant cannot establish a right to preference on the ground of a trust relationship: Freiberg v. Stoddard, 161 Pa. 259; Com. v. Trust Co., 250 Pa. 378; Fisher v. Davis, 278 Pa. 129.

The principal is not bound by the act of his agent, of which he had no notice, actual or constructive: Byrne v. Dennis, 303 Pa. 72; First Nat. Bank v. Trust Co., 297 Pa. 115.

OPINION BY MR. JUSTICE DREW, November 28, 1932:

The Dollar Title & Trust Company, of Sharon, Pennsylvania, organized in 1920 under the provisions of the Act of April 29, 1874, P. L. 73, became insolvent, and was taken over by the secretary of banking on November

13, 1930. In his first and partial account, filed August 6, 1931, he allowed only two of the six claims presented by appellant, Metropolitan Life Insurance Company. To this account the insurance company filed eight exceptions, all of which were overruled (except as to one small item involved in the fourth exception) by the Court of Common Pleas of Mercer County, and this appeal followed. By the assignments of error, appellant questions the disposition made by the court below of four of its six claims.

By the terms of an agreement entered into August 17, 1925, and supplemented November 21, 1927, the Dollar Title & Trust Company was to obtain and sell to appellant bonds and notes secured by first mortgages, and thereafter to act as appellant's agent and correspondent in the collection of the sums due from the mortgagors. Under this agreement a large number of mortgage loans were negotiated by the trust company, and assigned to appellant. Interest and installments of principal on these mortgages were payable semiannually. However, the trust company arranged with many of the mortgagors to make monthly payments in advance upon these semiannual obligations. The sums thus paid in advance were carried by the trust company in an account under the name of "1 Madison Ave., N. Y. City. Metropolitan Mortgage Loans. Dollar Title & Trust Co.— Trustee." This account was not subject to appellant's check, nor were statements as to its balance ever rendered to it by the trust company. Indeed, so far as is shown by the record, appellant's only information as to the account was that contained in a letter written September 20, 1929, by the treasurer of the trust company explaining, in answer to an inquiry, the plan of monthly payments in advance; deposits made under it, he said, "are carried in our institution and are properly earmarked so as to avoid any question as to ownership." The trust company, having been paid in advance, then remitted to the appellant the sums due it on the proper

dates by a draft on its correspondent bank in New York, and entered the transaction on its books as a check drawn against this account. Such a draft, in the sum of $13,666.97, was drawn on the Irving National Bank of New York on November 12, 1930, the day before the secretary of banking took possession, and sent to appellant, but it was not honored by the drawee because of insufficient funds. After deducting the amount of the draft, the balance shown in the mortgage loan account at the close of business November 12, 1930, was $17,-506.02. Appellant filed claims for these two sums, contending that they should be considered as deposits, or claims of the first class, but the secretary of banking allowed them only as general claims, or claims of the second class. To this disposition appellant filed exceptions, the overruling of which by the court below is the subject of the first two assignments of error.

In the course of business, appellant purchased from the trust company four bonds and mortgages for $13,030. The loans represented by these securities had been made by the trust company through its treasurer, one Matthews. He took the mortgages in its name and withdrew in cash their face value. But instead of paying this money over to the mortgagors, he converted it to his own use. Subsequently the mortgages were assigned to appellant, payment being made by a deposit in the trust company's account in a New York bank. Matthews had stolen other funds from the trust company, and, by means of various bookkeeping entries and substituted drafts, he withdrew this credit from the New York account and used it to cover his previous defalcations. The result of this juggling, according to the testimony of the bank examiner, was that no part of the money received by the trust company from the sale of these bonds and mortgages was retained by the trust company as assets. Appellant, on the ground that the trust company retained the money so received as a trustee ex maleficio, claims to be entitled to this sum, either in its own right

or to the use of the mortgagors, in preference to the depositors of the trust company. The refusal of the secretary of banking and the court below to allow this claim has been assigned as error.

The other claim, the disposition of which is covered by the fourth assignment of error, is very similar. In the same way, appellant purchased five other mortgages from the trust company. In this case, however, some of the money borrowed by the mortgagors was paid to them, and the balance, amounting to $17,503.07, was to be used to pay off prior liens upon the mortgaged properties. This was not done, Matthews converting the funds to his own use, and appellant received, instead of first liens, as was contemplated by the agreement of 1925, second mortgages. The money paid for these securities was similarly used by Matthews to cover his prior defalcations. Appellant's claim to a preference as to this item of $17,-503.07 was also disallowed by the secretary of banking and the court below.

The Act of May 23, 1913, P. L. 354, which governs the distribution of the fund now in the possession of the secretary of banking, provides that upon liquidation the assets of a trust company shall be distributed in the following order: "First. To the payment of all depositors in the trust company, whether the deposits be subject to immediate check or only payable after specified notice, or at the expiration of a fixed period, whether or not such notice has been given or such period expired at the time of such distribution. ...... Second. To the payment and discharge of all the remaining liabilities of such trust company or corporation." Appellant contends that the Metropolitan Mortgage Loan account carried on the books of the trust company was a deposit payable at the expiration of a fixed period, and hence that as to this amount it is entitled under the provisions of the statute to share with the ordinary depositors. The fallacy of this contention is evident when the true relationship between appellant and the trust company is

considered. The latter was merely acting, under the agreement of 1925, as appellant's agent in collecting the installments of interest and principal due upon these mortgages. Having collected certain sums in advance of the due date, it held them for its principal in an account earmarked by appellant's address. This was in the nature of a running account of the collections made, and had none of the ordinary incidents of a deposit; it did not even stand in appellant's name. That the trust company called this account a deposit did not make it such; its status must be determined from all the circumstances, regardless of its designation by the parties: Com. v. Tradesmen's Trust Co. (No. 3), 250 Pa. 383. The facts surrounding this transaction amply prove that appellant did not intend to be a depositor of the trust company, nor did the latter so consider it. The term "depositor" must be understood in its popular sense, as one who has entrusted money to a bank for convenient safe-keeping, subject to his control: Com. v. American Trust Co., 241 Pa. 153; Schwartz's App., 291 Pa. 463; Appeal of Nocera, 95 Pa. Superior Ct. 199. In Parkesburg Bank's App., 6 W. N. C. 394, the situation was quite similar to that in the present case. The Bank of Brandywine acted as correspondent of the Parkesburg Bank for the collection of checks and drafts, entering the proceeds thereof on its books to the credit of the forwarding bank. The sums so collected were subject to draft by the Parkesburg Bank, but the usual method of settlement was by weekly drafts drawn on Philadelphia banks. We refused the claim of the Parkesburg Bank to share with the depositors of the Bank of Brandywine, upon its dissolution, saying, "The balance due to the Parkesburg Bank was simply the result of mutual accounts between it and the Bank of Brandywine. The notes, drafts and checks charged and credited, were merely in the current of their mutual dealings, and when credited did not constitute a deposit in the proper sense of the term as used in the Bank Acts. A depositor meant to be preferred, is

one who places his money in deposit for safe keeping, to be paid out on demand upon his checks or drafts therefor. His relation is one of confidence or trust, depending on the faith that his money will always be forthcoming when he needs it. ...... Such a transaction differs wholly from the transactions of banks and bankers dealing with each other, by way of collections for each other, contained in running accounts of debits and credits. Such transactions are not deemed deposits in a proper sense." So also, one who has deposited money with a trust company for the purchase of Liberty Bonds is not a depositor (Fisher v. North Penn Bank, 77 Pa. Superior Ct. 558), nor, prior to the Act of 1913, supra, was the holder of a check drawn by a trust company upon itself (Com. v. Tradesmen's Trust Co., 61 Pa. Superior Ct. 137). Certainly in no usual or ordinary sense can appellant be considered a depositor of the trust company.

In arguing that this account is one given preference by the Act of 1913, supra, appellant has entirely misconstrued the meaning of that statute, which was only to include time depositors in the favored class with those whose accounts were subject to immediate check. The Act of May 8, 1907, P. L. 192, before it was amended by the Act of 1913, provided only that the first use of the assets should be "to pay all deposits in the trust company." Under that statute funds deposited in a trust company, but not subject to the order of the depositor, at his pleasure, by check or draft, did not constitute a deposit such as would make the depositor a preferred creditor in the event of the trust company's insolvency: Com. v. Tradesmen's Trust Co. (No. 3), supra; see Parkesburg Bank's App., supra. The Act of 1913 cannot be construed to have broadened the meaning of the term "depositor" so as to include one in appellant's position, whose relationship with the trust company was solely one of principal and agent.

That appellant cannot be deemed a depositor is apparent when the reason for the preference given that class is considered. The success of a bank depends upon its ability to secure persons who will entrust their funds to it, and lend it money, for that is the essence of a deposit: Cameron's Account, 287 Pa. 560. Hence this preference was given to depositors as an inducement to those having funds to deposit them. There can be no pretense that appellant was entrusting to the trust company for safe-keeping these collections made by its agent on its behalf.

Appellant's claim to a preference in respect to the sums of $13,030 and $17,503.07 paid for the two sets of mortgages, on the ground that the trust company received and retained these payments as a trustee ex maleficio, is equally unfounded. In the one case appellant received bonds and mortgages for which the mortgagors received no consideration, in the second case the bonds and mortgages were second liens instead of first liens as contemplated by the agreement of 1925. In the absence of any fraud on the part of the trust company, and none is either alleged or proved, it cannot be said to hold the money it received in payment as a trustee, because the documents transferred were not what the parties thought they were. No knowledge of this fact by the trust company is alleged, and it cannot be charged with notice because of the knowledge of its agent, Matthews, as he was acting fraudulently for his own benefit, and adversely to the interests of his principal: First Nat. Bank v. Bangor Trust Co., 297 Pa. 115; Byrne v. Dennis, 303 Pa. 72. Appellant's claim is in the nature of an unliquidated one for breach of contract, and it cannot be said that the refusal to allow it as a preferred claim was error.

The assignments of error are overruled, and the order of the court below is affirmed.

See case immediately following.