## In re Manayunk Trust Company. No. 2

*Francis S. Cantrell, Jr.*, and *Ruby R. Vale*, for exceptants.
*William W. McKim*, contra.

LAMBERTON, J., July 19, 1934.—On October 13, 1931, the Secretary of Banking took possession of the business of Manayunk Trust Company, under section 21 of the Act of June 15, 1923, P. L. 809, and proceeded to liquidate the same. Among the assets coming into possession of the Secretary of Banking (though to what extent they are assets of Manayunk Trust Company is a matter of dispute) were a group of mortgages, constituting what will hereinafter be referred to as the "mortgage trust pool". This pool had been created some years before by the transfer of mortgages owned by Manayunk Trust Company individually into the name of Manayunk Trust Company, trustee, and it had been added to from time to time from the same source. In the early days, this was done by the execution of declarations of trust, and in the later days by assignments from Manayunk Trust Company to Manayunk Trust Company, trustee. The form of the declarations of trust was as follows:

"Whereas, in making the investments of funds secured by the mortgages hereinafter set out and described, we were and are acting in a fiduciary capacity under divers wills, deeds of trust, and appointments as fiduciary under decrees of courts of competent jurisdiction.

"Now know ye that we, the said Manayunk Trust Company, do by these presents make known, admit, and declare that the mortgages, bonds and warrants, and premises, hereinafter particularly described, were taken and held by us and that we now hold the same and will continue to hold the same in such fiduciary capacity and upon the various and sundry trusts and for the use and benefit of the beneficiaries of and under the said trusts and that the said mortgages are particularly described as follows: . . .

"And we do further declare that we have no beneficial interest therein, except an equity, being the difference in amount between the total face or par value of all of said mortgages and the total amount of trust funds invested therein."

The assignments were in the usual form, except for the following clause:

"Together with all and singular the rights, remedies, and incidents thereto belonging, and all right, title, interest, property, benefit, advantages, claim, and demand of said Manayunk Trust Company in and to the same and every part thereof; saving and excepting only an equity therein, being the difference in amount between the total face or par value of all mortgages so held in trust to secure trust certificates and the total amount of trust funds so invested."

Having established this mortgage trust pool, the trust department of Manayunk Trust Company from time to time transferred to its commercial department funds held by Manayunk Trust Company in its fiduciary capacity, and these funds were then mingled with and became part of the general assets of the bank. When funds were thus transferred, certificates were issued and held by Manayunk Trust Company as assets of the estates in question. These certificates were identical, except for names, dates, and amounts. The following is a copy of one thereof:

"MORTGAGE CERTIFICATE OF MANAYUNK TRUST COMPANY
4340 Main St., Manayunk, Philadelphia,

$1,000.00                   Not Transferable                   Series No. 777

This certifies that Manayunk Trust Company, trustee for Emma George under will of Sarah A. Kenworthy, deceased, has deposited with Manayunk Trust Company, $1,000.00 payable on demand, with interest thereon, at the rate of 5½ percent per annum, payable semi-annually on the first day of January and July, until paid.

As security for the payment of this and other similar outstanding certificates of this series No. A B C (not exceeding in the aggregate the sum of $281,065.47), Manayunk Trust Company has set apart and holds in trust the certain bonds and mortgages for the amount of $297,000.00 described by indorsement hereon, with all the rights and remedies incident thereto.

Witness, the corporate seal of Manayunk Trust Company duly attested this 14th day of August, 1931. Registered page 111.

JOHN A. STRUSE, President.
CHAS. A. JORDAN, Secretary.

FRANCIS S. CANTRELL, JR., Trust Officer."

On the back of the certificate appeared the following:

"Certain Bonds and Mortgages Referred to Within are fully described and registered in Registry Book (Series ————) of Manayunk Trust Company on pages ———— to ————.

"The within mortgage certificate is this day paid in full with interest to date."

In its trust fund ledger, Manayunk Trust Company carried an account designated as "mortgage trust certificate interest", and the control sheet of the trust department contained an entry "mortgage trust certificates", which showed the face value of such certificates outstanding. The equity in the mortgage trust

pool, being the difference between the face value of the certificates outstanding and the face value of the mortgages in the pool, was merged with the mortgages owned outright by Manayunk Trust Company and included in an item called "mortgages" in the general ledger.

When the Secretary of Banking took possession of Manayunk Trust Company, the mortgage trust pool consisted of 33 mortgages, of the face value of $284,950, and cash in the amount of $8,250, or a total principal of $293,200, against which there were mortgage certificates outstanding, approximately 250 in number, aggregating $270,065.47, leaving a paper equity in said mortgage trust pool of $23,134.53. Many of these certificates are in the hands of successor trustees, named after the closing of Manayunk Trust Company.

When the Secretary of Banking filed his first and partial account on September 15, 1933, he did not include the certificate holders as either depositors or general creditors. Nor did he include the mortgage trust pool as an asset of the bank, except to the extent of $18,681.13, the appraised value of the paper equity. Exceptions have been filed on behalf of numerous certificate holders, and it is thus that the matter comes before us. The facts set forth above are all admitted. The question before us is purely one of law.

Counsel for the certificate holders contend that the primary relation between Manayunk Trust Company and the holders of the certificates is that of banker and depositor, and that the mortgage trust pool is collaterial security for the repayment of the deposits in full. Under this theory, the certificate holders would be entitled to dividends as depositors, and in case they were not so paid in full they would have recourse to the mortgage trust pool for payment of the balance.

Counsel for the Secretary of Banking contends that the relation between Manayunk Trust Company and the certificate holders is that of trustee and cestui que trust, and that the certificates themselves constitute a guaranty on the part of Manayunk Trust Company that the moneys invested in the mortgage trust pool, together with interest, will be repaid in full. Under this theory, the certificate holders must look primarily to the mortgage trust pool for repayment, and in case they are not repaid from that source they will have a claim against Manayunk Trust Company as general creditors.

This matter was previously before us in a collateral way, when the Secretary of Banking filed a petition averring that Manayunk Trust Company was a trustee in regard to the mortgages in the mortgage trust pool and asking for the appointment of a substituted trustee. We refused to appoint such substituted trustee, but in our opinion said: "We cannot, at this time, determine whether the relation is that of banker and depositor, secured creditor and debtor, trustee and cestui que trust under a trust ex maleficio, or any other relationship which the ingenuity of counsel may devise": In re Manayunk Trust Co., 17 D. & C. 19, 21.

The question now involved has therefore not been adjudicated by us, and it is fortunate that this is the case, because we now have before us many facts which were not presented on the former occasion.

In examining the papers establishing the relationship here existing, we find the words "in trust", "has deposited", "as security", and sundry other expressions which by themselves might indicate the existence of one status rather than the other. Words so used, however, are not conclusive, and in reality have very little probative value. We must examine all the facts and from those facts, rather than from the words used, determine the relationship which exists. As was said in Metropolitan Life Insurance Company's Appeal, 310 Pa. 17, 22: "That the trust company called this account a deposit did not make it such; its

status must be determined from all the circumstances, regardless of its designation by the parties: . . ."

Counsel for the exceptants and counsel for the Secretary of Banking have each argued that, if the situation be given the construction contended for by the other, Manayunk Trust Company has done an illegal act, and that the presumption is in favor of legality. This is true where there is ambiguity or doubt. But we must face the facts as they are, and we must determine the status of the parties as established by those facts, whether or not they disclose an illegal transaction.

If we take the mortgage certificates alone, the relation would undoubtedly be that of banker and depositor. A certificate of deposit could hardly be more clearly worded than is the first paragraph of the certificates in question, namely: "This certifies that Manayunk Trust Company, trustee for Emma George under will of Sarah A. Kenworthy, deceased, has deposited with Manayunk Trust Company $1,000 payable on demand, with interest thereon, at the rate of 5½ percent per annum, payable semi-annually on the first day of January and July, until paid."

This, if standing alone, would entitle the holder to a depositor's status under the Act of May 23, 1913, P. L. 354. We imagine that counsel for the Secretary of Banking would agree to this conclusion, because there is no substantial distinction between the above wording and that contained in a writing which counsel himself contended constituted a certificate of deposit, as appears in the notes of testimony taken at the hearing on these exceptions, to wit, "This certifies that Miss Winnie Phillips has deposited with Manayunk Trust Company the sum of $3,000, payable to herself on surrender of this certificate at the expiration of 1 year from the date hereof, with interest at the rate of 4 percent, payable half yearly." Nor does the second paragraph of the certificate change this situation. It reads as follows:

"As security for the payment of this and other similar outstanding certificates of this series No. A B C (not exceeding in the aggregate the sum of $281,065.47), Manayunk Trust Company has set apart and holds in trust the certain bonds and mortgages for the amount of $297,000 described by indorsement hereon, with all the rights and remedies incident thereto."

This, standing alone, would mean that mortgages have been set aside, not for the account of the certificate holder but as security for the repayment of the deposit. That a trust company may properly thus secure deposits is decided by the case of Cameron v. Christy, 286 Pa. 405.

On the other hand, if we ignore the certificates and look only to the creation and maintenance of the mortgage trust pool, we find an entirely different situation. The Act of April 6, 1925, P. L. 152, provides as follows:

". . . said companies may assign to their various trust estates participation in a general trust fund of mortgages upon real estate securing bonds, in which case it shall be a sufficient compliance with the provisions of this section for the company to designate clearly on its records the bonds and mortgages composing such general trust fund, the names of the trust estates participating therein, and the amounts of the respective participations; and in such case no estate so participating shall be deemed to have individual ownership in any bond and mortgage in such fund, and the company shall have the right at any time to repurchase at market value but not less than face value any such bonds and mortgages from such fund, with the right to substitute therefor other bonds and mortgages."

It will be noted that in order to create a trust under this act two things are necessary: (1) The creation of a trust fund of mortgages, and (2) the assign-

ment of a participation therein. The creation of the trust fund of mortgages does not in itself give rise to a trust relation. The assignment of participation is essential. But the act provides that both the trust fund of mortgages and the participation therein may be evidenced by proper entries upon the books of the trust company, and in this case such entries were made. Therefore, if we looked at the situation from this angle alone, the relation would be that of trustee and cestui que trust.

But we cannot arrive at a true conclusion by looking at either side of the picture alone. We must consider the papers by which the mortgage trust pool was created, the maintenance of this pool in the records of Manayunk Trust Company, and the wording of the certificates as well. From the entire situation, we must determine what the relations of the parties really were, and what status is thereby constituted.

In former times, moneys of a trust estate could be invested in mortgages, but the funds of one estate were used to buy one mortgage. If an estate purchased a mortgage, that mortgage became the absolute property of that estate, with all the incident possibilities of gain or loss. If interest was not paid, the estate was the loser. If, through foreclosure or otherwise, less than cost was realized, the estate was the loser. If, by prepayment or otherwise, the principal was paid off with a bonus, the estate was the gainer. If a mortgage was purchased at a discount and then paid in full, the estate was the gainer.

This situation had two disadvantages. In the first place, uninvested funds in an estate were frequently in odd amounts which could not readily be invested in mortgages. In the second place, an estate buying one or two mortgages ran the chance of severe loss in case of an unwise selection. The purpose of the Act of 1925 was to permit investment of odd amounts in mortgage securities, and at the same time to spread the risk of unwise selection by giving even a small estate an opportunity to own an interest in a number of mortgages. But the Act of 1925 did not fundamentally change the nature of the investment. An estate buying a participation in a trust fund of mortgages does not become the owner of any particular mortgage, but it does become the owner of an undivided interest in all the mortgages. Every gain or loss of principal is shared pro rata by all the participants. A participant is not entitled to receive back the amount invested, but is entitled to its pro rata share of the entire fund. A participant is not entitled to interest at any fixed rate, but to its pro rata share of all interest received by the fund.

The situation of a depositor is, of course, radically different. As stated in Metropolitan Life Insurance Company's Appeal, supra: "The term 'depositor' must be understood in its popular sense, as one who has entrusted money to a bank for convenient safe-keeping, subject to his control".

In Prudential Trust Company's Assignment, 223 Pa. 409, 413, it is said: "It is the business of a bank to receive money on deposit and use it as its own, being accountable as debtor to the depositor for the money so deposited which may be subject to check or draft or payment upon notice or demand as the parties may agree."

In determining whether the relation existing is that of trustee and cestui que trust, or banker and depositor, we receive no aid from an examination of the disposition of the funds involved. The moneys were paid by the trust department to the commercial department and mingled with the general assets of the bank. This is consistent with either theory.

We will examine certain facts existing in the instant case as contrasted with those facts as they would exist if the relation were that of banker and depositor, and as they would exist if the relation were that of trustee and cestui que trust.

*Principal repayable*

1. Instant case—the exact amount paid in.
2. Banker and depositor—the exact amount paid in.
3. Trustee and cestui que trust—an uncertain amount being the pro rata share of entire pool.

*Time of repayment*

1. Instant case—on demand.
2. Banker and depositor—on demand (unless otherwise agreed).
3. Trustee and cestui que trust—at time of repayment of principal (perhaps some at one time, perhaps some at another).

*Amount of interest payable*

1. Instant case—5½ percent.
2. Banker and depositor—as agreed by the parties, in this case 5½ percent.
3. Trustee and cestui que trust—pro rata share of interest actually received.

*Time of payment of interest*

1. Instant case—January 1st and July 1st.
2. Banker and depositor—as agreed by the parties, in this case, January 1st and July 1st.
3. Trustee and cestui que trust—as and when paid by mortgagors.

Manayunk Trust Company has itself agreed to repay a specific sum on demand, and the certificate holder can get no more; it has agreed to pay interest at the rate of 5½ percent and the certificate holder can get no more. If the mortgages became immensely valuable, Manayunk Trust Company could pay the certificates off at face value and keep the profit. If the mortgages went bad, Manayunk Trust Company must pay the certificates off at face value and suffer the loss. If the interest payable was 6 percent (as it probably was), Manayunk Trust Company need pay the certificate holder only 5½ percent, and could keep ½ percent for itself. If there was a default in payment of interest, Manayunk Trust Company must still pay the certificate holder interest at the rate of 5½ percent and itself bear the loss. Any gain or loss of principal or income is the gain or loss of Manayunk Trust Company and not of the certificate holders. This situation is in exact accord with the relation of banker and depositor and entirely inconsistent with the relation of trustee and cestui que trust.

We therefore have no hesitation in declaring that the relation created was that of banker and depositor, and that the mortgage trust pool is security for the repayment of the deposits. The certificate holders should therefore be listed as depositors and should be paid dividends as depositors. The mortgage trust pool should be liquidated. The face value of the pool is $293,200. The face value of the certificates outstanding is $270,065.47. Manayunk Trust Company therefore had an equity in this pool of $23,134.50 or 7.89 percent. Of the proceeds of the pool, 7.89 percent should therefore go into the general assets of Manayunk Trust Company, and the balance of the proceeds, to wit, 92.11 percent should be segregated by the Secretary of Banking. If the certificate holders are not paid in full as depositors, they will be entitled to payment of the balance of their claims out of the funds so segregated, to wit, 92.11 percent of the proceeds of the mortgage trust pool. Any balance remaining in this segregated fund after payment of the certificate holders as aforesaid will become part of the general assets of Manayunk Trust Company.

And now, to wit, July 19, 1934, the exceptions are sustained and the certificate holders are declared to have the status of depositors with the mortgage trust pool as collateral security for payment of principal and interest to the extent indicated in the foregoing opinion.