Civic Building and Loan Association's Appeal.

598

Argued December 9, 1935.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADTFELD, PARKER, JAMES and RHODES, JJ.

*Edward McKean Hawes,* with him *Horace Michener Schell* and *Charles Townley Larzelere,* for appellant.

*Gerald F. Flood,* Special Deputy Attorney General, with him *Frank J. Bradley,* Special Counsel, *Robert L. Myers, Jr.,* Deputy Attorney General and *Charles J. Margiotti,* Attorney General, for appellee.

OPINION BY PARKER, J., April 17, 1936:

This appeal requires us to determine the status of an account of The Civic Building & Loan Association with the Merion Title & Trust Co. of Ardmore, a closed bank, on distribution of the assets of the trust company. The question involved was raised on excep-

tions to the account of William D. Gordon, Secretary of Banking of this Commonwealth.

The facts are not in dispute. Joseph C. Nancarrow and wife borrowed from the loan association the sum of $2,000, giving a real estate mortgage as security. As there were liens on the premises and other claims arising out of the transaction, the well known custom was followed of making "settlement" through a trust company. On October 22, 1931, the loan association having a deposit in the trust company drew and delivered its check to the order of that company for $2,000. The check was charged to the depositor's account, thereby reducing the account by that amount and was placed in an account in the commercial department of the trust company under name "Merion Title & Trust Co. of Ardmore, Penna. ...... Settlement Account". Checks to the amount of $1,850 were then drawn by an authorized agent of the trust company and delivered to the payees, and $150 was held for the completion of certain repairs then under way. One check for $350 was cashed, but the other checks were not presented for payment before the trust company was, on October 28, 1931, closed and taken over by the Secretary of Banking. The mortgagors, the Nancarrows, assigned to the loan association their right to the fund, thereby eliminating any adverse claim from that source.

The loan association made claim for $1,650 as a preferred claim ahead of depositors. By the account of the Secretary of Banking the amount of $1,612.92 was given the status of a depositor, the difference being accounted for by reason of certain charges of the trust company for its services. The account listed the checks, amounting to $1,462.92, under the head of those entitled to the status of depositors and under a sub-head entitled "Civic B/L Assn ...... Dividend on the following checks 112087 to 112096 inc. payable to Civic B/L Assn., Joseph C. Nancarrow & Ethel D. Nancar-

row, the payee or the bona-fide holder as their interests may appear". The sum of $150 held for repairs was given the same ranking and similar notations were made. These restrictions were apparently incorporated in the report for the purpose of completing the account at the time and leaving for future determination among mortgagors, mortgagee, and payees of the checks their respective rights to the dividend as fixed.

Exceptions were filed to the account by the loan association on the ground that its claim should have been preferred to that of depositors. The court of common pleas dismissed the exceptions and held that exceptant was entitled only to the status of a general creditor back of the depositors.

We are all of the opinion that the claim of the loan association is not entitled to preference over the depositors. In making the settlement, the trust company was intrusted with a fund for the purpose of paying certain liens and claims in the interest of both mortgagors and mortgagee. It was necessary that the liens be discharged in order that the mortgage might be a first lien and the mortgagors had an interest in knowing that these liens were removed from the record. That the trust company was a trustee for both the mortgagors and the mortgagee is clear: Vosburgh's Estate, 279 Pa. 329, 123 A. 813. Section 87 of the Restatement of the Law of Trusts, cited by the appellee, is not applicable.

"A trust creditor is not entitled to preference over general creditors of the insolvent merely on the ground of the nature of the claim ...... But if we hold to the rule that, to entitle one claiming to be a trust creditor to preference, he must trace the trust money into some specific property, or into some particular fund or account of the assignor [trust company] with which the latter has mingled it, we think the plaintiffs have failed because they have not shown that the assignor [trust company] received any money as the proceeds of the drafts [checks] which he [it] added to and mingled

with the general mass of deposits in bank, or that any part of the money in bank was ever set apart, or in any manner appropriated to the payment of the drafts [checks]": Freiberg v. Stoddard, 161 Pa. 259, 262, 264, 28 A. 1111. That statement by Judge RICE was adopted by the Supreme Court and again approved in Royersford Trust Co. Case, 317 Pa. 490, 492, 178 A. 288.

The trust corpus did not come to the trust company as specific property, nor was there any subsequent segregation or other action by the trustee whereby there was taken from the general mass of property of the trust company, consisting we may assume, of cash, bills receivable, mortgages, deposits in other banks and the like, any specific property which was appropriated to the trust estate. If the Freiberg case is still the law in this Commonwealth, and the decisions in Cameron v. Carnegie Trust Co., 292 Pa. 114, 140 A. 768, and Royersford Trust Company Case, supra, hold that it is, then it is the trust property and not the claim which must be traced. Of course the bookkeeping entries may be of assistance in tracing the property. When the trust company made a bookkeeping entry charging the loan association's deposit account and crediting the settlement account, it was evidence that the trust company had exchanged its liability to the loan association as a depositor, a relation of debtor and creditor, for one as trustee and beneficiary, but there was not a semblance of change in the actual property held by the trustee. New assets did not come into the hands of the trustee and no change was made in the specific property held by the trust company at any time prior to the closing of that institution.

In the Freiberg case the plaintiff drew drafts on two customers of the bank and sent the drafts to that bank for collection. The drafts were accepted by the drawees and charged to the accounts of the drawees in the bank and then the bank remitted the proceeds by sending a draft drawn on a second bank. This draft was not pre-

sented to the second bank before the first bank made an assignment for benefit of creditors and closed its doors. It was held that the charging of one account and crediting of another was not sufficient to constitute a tracing of specific property and the preference was denied. As was said in Thompson's Appeal, 22 Pa. 16, it is impossible in the case we are considering to lay hand upon a single article of property or on a single dollar of money that came into the hands of the Secretary of Banking and say that any specific thing or money is the property of the mortgagors or mortgagee, or the product of it.

A comparison of the case of Freiberg v. Stoddard, supra, with the cases of Cameron v. Carnegie Trust Company, supra, and Mehler's Appeal, 310 Pa. 25, 164 A. 619, representative of two lines of cases relied upon by the respective parties, makes clear the essentials that are lacking in appellant's case. While in the Freiberg case, as we have shown, there was no specific property which could be identified, in the Carnegie Trust Company case the Ottumwa National Bank sent a note to the Carnegie Trust Company for collection and the latter made the collection in cash and remitted the proceeds to the forwarding bank by a draft on the Colonial Trust Company. The Carnegie Trust Company was insolvent when it received the collection and closed its doors before the draft could be presented to Colonial Trust Company. The claim to preference was sustained. It was there shown that actual cash was received by the Carnegie Trust Company in settlement of the note and thereby the assets of that trust company were increased by the amount received. To this sum of money the depositors or other creditors of the Carnegie Trust Company had no claim, for such money was never the property of the Carnegie Trust Company, and the property could be traced. In Mehler's Appeal, supra, the facts were in principle the same. There, the trust corpus was 100 shares of stock

in the Pennsylvania Railroad Company, which a Sharon bank improperly sold and then placed the proceeds in the Mellon National Bank of Pittsburgh. Just as in the Carnegie Trust Company case, the trust corpus was identified and followed to the place it was found when the bank closed its doors.

In the present case all that claimant has shown is a claim recognized on the books of the Merion Title & Trust Company of Ardmore, and it has failed to trace any trust res into specific property. The claim to preference therefore cannot be sustained. Our conclusions are supported by the Royersford Trust Company Case, supra.

This leaves for consideration the further question as to whether the claimant is entitled to the status of a depositor. As the trust company was closed prior to the effective date of the Department of Banking Code (Act, May 15, 1933, P. L. 565, 71 PS 733) the question must be disposed of under the law as it was prior to that date. The liquidation of assets of trust companies was provided for by Act, May 8, 1907, P. L. 192, as amended by Act, May 23, 1913, P. L. 354 (7 PS 689), of banks by Section 28, Act, May 13, 1876, P. L. 161 (7 PS 483).

The content of the word "depositor" as used in various statutes providing for preferences in the case of the liquidation of assets of insolvent banks and trust companies is limited and defined by numerous decisions of the Supreme Court and this court. An examination of those cases will show that the claimant, whether claiming in its own right or under mortgagor, is only entitled to the status of a general creditor. When the loan association transferred the $2,000 from its checking account by delivering its check to the bank for distribution, it, as well as the mortgagor, lost all independent control or authority over it and it was then held by the trust company for a specific purpose. The account not being "subject to the order of the deposi-

tor, at his pleasure, by check or draft, did not constitute a deposit such as would make the depositor a preferred creditor in the event of the trust company's insolvency": Metropolitan Life Ins. Co.'s Appeal, 310 Pa. 17, 164 A. 715. It has been so held uniformly through a long line of cases: Parkesburg Bank's Appeal, 6 W. N. C. 394; Prudential Trust Co.'s Assignment, 223 Pa. 409, 72 A. 798; Com. ex rel. v. Tradesmen's Trust Co. (No. 3), 250 Pa. 383, 95 A. 578; Com. ex rel. v. Tradesmen's Trust Co., 61 Pa. Superior Ct. 137; Fisher v. North Penn Bank, 77 Pa. Superior Ct. 558. In the last case a depositor gave his check in the sum of $5,000 to the bank. He was given a receipt showing that that sum was held for the purchase of a like amount of Victory Liberty Loan bonds. The check was charged to the depositor's account and the bank made a corresponding entry to the credit of "Fifth Victory Loan Account". The bank failed to deliver any bonds before it closed its doors and certain bonds which it had purchased were used for its own financing and it was held that the claimant was not entitled to be paid until after depositors were paid in full. The case of Com. ex rel. v. Tradesmen's Trust Co. (61 Pa. Superior Ct. 137) involved a settlement account as here. When exceptions were filed to the items now in dispute that brought in issue a determination of the status of the claim and the court below properly held it was not limited to improving the status.

The order of the court below is affirmed.